MISSOURI PACIFIC TRANSPORTATION COMPANY *v.* MOODY.

4-5674                                    134 S. W. 2d 868

Opinion delivered December 11, 1939.

*Russell Baxter* and *E. W. Moorhead,* for appellant.

*Claude M. Cruce* and *C. T. Sims,* for appellee.

BAKER, J.   The appellant states the points raised upon this appeal as follows:

"First: The court erred in not permitting the defendant to use Dr. Price to testify as to the plaintiff's condition when he treated her after she testified as to the doctor's diagnosis.

"Second: There was no issue in the evidence to go to the jury on the question of whether or not there was

negligence in stopping the bus at that point, which was wrongfully submitted in instruction No. 5A.

"Third: It was prejudicial error for the court to announce in open court before the jury that someone was talking to the witnesses and then have the bailiff bring Mr. Ward in the presence of the jury, and the jury then being excused did not know whether or not Mr. Ward had made a satisfactory explanation. This was prejudicial."

To discuss these matters properly it becomes necessary to state some of the facts presented upon the trial. Mrs. Moody, the appellee, bought a ticket at Monticello for a trip to Enon Church on one of the routes covered by the bus operated by the appellant company. She expected to leave the bus before it reached the actual location of the church. The driver of the bus admits that this was permissible, that he did stop at points short of the destination when asked to do so and permit passengers to leave the bus. The signal to stop was sounding a buzzer which notified the driver someone desired to alight. On this particular occasion Mrs. Moody expected to leave the bus before she reached Enon Church, at the home of her brother, a point at which buses frequently stopped. She says that she gave the proper signal before reaching this point and then spoke to the driver of the bus, but notwithstanding these facts, he carried her to a point about 75 yards beyond the one at which it had been accustomed to stop on signals. It was after night, somewhat after 8 o'clock on March 3, 1938, on highway No. 35, east of Monticello. When the appellee was ready to leave the bus after sounding the signal, the driver did not back up, but remained in his seat and opened the door by pulling a lever used for that purpose. Mrs. Moody left the bus at the point designated, but says just as she was stepping to the ground the bus started, causing her to lose her balance, or foot-hold, and fall on the edge of an embankment from the top of which she slipped or slid into a ditch on the side of the road, causing the injuries which she alleged she suffered and for which she sued. In her testimony, Mrs. Moody de-

scribing her condition alleges that she had been at work in a WPA sewing room regularly up to the time of her injury, that after working hours on the day of her injury, she bought a ticket to go to her brother's to spend the night. After the injuries, she returned the next day and resumed her work on the 4th, and worked only enough thereafter to prevent a discharge. Some of those who worked with her testified, in addition to her own statement, that they saw bruises and scratches upon her body, particularly upon her hip and legs. It is contended, however, that the most serious consequences arising out of this injury was occasioned by reason of the fact that Mrs. Moody was then in a pregnant condition and suffered, on account of the fall, very much for a time thereafter. On the Sunday following the fall she fainted while trying to prepare dinner for the family, called the doctor who sent her some medicine to relieve pain and later called to see her and gave her advice as to the proper care of herself under the circumstances. There was no injury of a permanent nature so far as the evidence discloses and it may be taken as well nigh conclusive for the reason that at the proper time a normal child was born without any serious effects traceable to the alleged fall and injury.

The facts in regard to the manner in which the accident occurred are very sharply in dispute. As was stated above, at the time Mrs. Moody left the bus, it was already dark and the driver says he did not suspect any accident and did not learn of it until later when he received a letter from Mr. Moody stating that there had been an accident on that occasion.

The first question to be settled arises out of a bit of testimony offered by Mrs. Moody who was describing her condition and said that the doctor told her "she was bordering on—," she did not finish that sentence because she was interrupted and was told not to state what the doctor had said. She was then asked if she knew what her condition was and she answered that she knew she was bordering on a miscarriage. Upon cross-examination defendant's counsel developed that Dr. Price had so advised her. Judging from the rec-

ord it could not reasonably be in dispute that when she made her statement on her examination in chief she referred only to Dr. Price and for the further reason that there could be no dispute or misunderstanding about an idea she was attempting to give to the jury in her testimony, we would be impelled to disregard the effect of the cross-examination. In fact, we do not think the cross-examination in this particular developed more than the idea she had already communicated to the jury that Dr. Price upon his visit had advised her that she was bordering on a miscarriage. She was asked if she would consent for Dr. Price, her physician, to testify in the case in regard to what he found on examination and his treatment of her from and after the time of the alleged injury. She objected. The appellant then insisted that she had waived the privilege by testifying to statements made by the doctor. We think this position is well taken. Certainly she may not open the way by testifying to statements voluntarily and then refuse to permit the doctor whom she has quoted to testify. *Albritton, Admr.* v. *Ferguson & Son,* 197 Ark. 436, 122 S. W. 2d 620.

Without attempting an analysis of the law in regard to privileged communications made to physicians and nurses, we suggest merely that if the ruling of the court was erroneous in limiting the testimony of the doctor to such questions and answers as was necessary to cover the same matters about which Mrs. Moody testified, the case ought to be reversed unless it is apparent from the record considered as a whole that no prejudice followed this ruling of the trial court.

From the foregoing statements, it appears that Mrs. Moody, in quoting Dr. Price, testified to the extent of her injuries. The doctor was examined in that regard and the appellant had the benefit of his statements in that particular matter. There was nothing in this examination that would or could have been competent or relevant to determine liability nor was it necessary for the doctor to know or understand more than the fact that his patient had gotten the fall in alighting from a bus, that it was this fall that caused the bruises, scratches

and abrasions from which she suffered at that particular time, all of which on account of her condition gave a greater degree of importance to the injuries received. It appears to us that the effect of the injuries is not substantially in dispute, but the occasion or cause thereof is very much so. We have given careful attention to the elaborate briefs prepared by the appellant and the appellee and the case has been argued orally, and we find that the appellant is not making any controversy concerning the amount of the recovery. We think it may be fairly stated, if not actually conceded, that the appellants agree that if there is any liability, the verdict is not excessive. While it is true that the court did not permit an extensive investigation by appellant's counsel in the examination of Dr. Price because of the objection made by his patient, the appellee, the conditions and circumstances are such that the doctor's testimony could have been considered by the jury only to determine the extent of the injury, and consequent amount of liability. There is no statement of what the doctor's evidence would have been; no examination of him at chambers out of the presence of the jury to indicate that the doctor's testimony could have covered any particular phase of the case except the one mentioned,—the extent of the injuries received.

We have just re-examined the testimony of Dr. Price and find he was examined by the submission to him of hypothetical questions just as were asked other physicians who gave their several expert opinions answering the same questions propounded to and answered by Dr. Price. He did not agree with the others, but his conclusions were more favorable to appellants than theirs. Had the jury accepted the theory of appellant as exemplified by Dr. Price's evidence, there could have been only a small recovery at most for slight bruises, scratches and a torn dress. The doctor was examined by the submission to him of hypothetical questions based largely upon Mrs. Moody's statements and by which it seems the appellant was able to submit questions and elicit answers that they desired from the doctor. Indeed, the appellant's counsel followed the same form of ques-

tions that had been used by the appellee in the examination of the doctors or of her physicians testifying as experts in regard to the effect and consequences of the fall and such injury as Mrs. Moody was alleged to have received, and the doctor was permitted to answer all these questions. We think it appears conclusively that there was no denial on the part of the court to permit an examination of Dr. Price. The appellants had the benefit of his presence on the stand, his testimony in answer to the hypothetical questions propounded to the appellee's physicians which, of course, covered what was deemed to be the material facts of the case, and there is no particle of evidence in the entire record that the doctor knew any other fact that might have been of benefit in the settlement of this case. He was not asked what Mrs. Moody's condition was on the occasion of his visit or call made immediately after the alleged fall. Had such questions been asked he would not have been permitted to answer, such was the effect of the court's ruling. It is true we said in the case of *Powell Bros. Truck Lines, Inc.* v. *Barnett,* 194 Ark. 769, 109 S. W. 2d 673, that ''prejudice is presumed when a party is denied the right to use a competent witness.'' However well grounded that statement may be, it certainly cannot be controlling under the circumstances here for the reason that there was no actual denial of the right to examine Dr. Price. We declare the ruling of the court was, to some extent, a limitation upon the examination of the witness, but it seems that this limitation came only after there was somewhat of an extensive examination. There was no statement in regard to any other matter that Dr. Price knew, about which he could have been examined.

We are now confronted with the argument that we ought to reverse this case and send it back so that Dr. Price could be examined in regard to one detail only. That is Mrs. Moody's condition at the time of his visit after the injury. It is not contended except by inference that his testimony if given would have been materially different from that of Mrs. Moody. His conclusions differed very much from her evidence, but the jury failed wholly to accept and follow the doctor's the-

ory. In truth, there is no prejudice in this case, and we think that not only is this a reasonable conclusion, but it is made affirmatively to appear by the examination of the entire record.

The next objection made was, as quoted above from the appellant's brief, that there was no issue in the evidence to go to the jury on the question of whether there was negligence in stopping the bus at a point 75 yards beyond where Mrs. Moody requested to be put off and this was wrongfully submitted under instruction No. 5A. Instruction No. 5A is to the effect that it was the duty of the carrier operating a bus for the travel and convenience of the public to use ordinary care to deliver its paid passengers at the point of destination in a reasonably safe place and in a reasonably safe manner, considering the situation and physical conditions then there surrounding. This objection is not urged so much against the form or substance of the instruction above set out as it is to the alleged fact or statement that there was, under the circumstances, no actual negligence on the part of the carrier upon which liability might be founded. We so understand the contention. We have already stated that Mrs. Moody testified that it was after 8 o'clock at night, that it was dark; the driver of the bus says he could have seen Mrs. Moody by the light of the bus if she had fallen from the step; so to a certain extent the driver and Mrs. Moody both agree that at the particular time of the accident it was dark to the extent that light was necessary to see or observe just what was occurring or taking place. Mrs. Moody has testified and her testimony is not disputed, except from the fact that she is an interested party whose testimony must always be regarded as disputed until the facts are determined by the jury, that the bus stopped at a point directly on the edge of the highway so close to the side of the road or on the shoulders that when she stepped from the running board to the ground she was on the edge of this slope; that the premature starting of the bus caused her to fall and slip or slide down the highway shoulder. The instructions merely told the jury that it was the duty of the driver of

the bus to exercise ordinary care or reasonable care to permit the passenger to get off the bus at a place reasonably safe. The instruction was highly favorable to the appellant particularly in the light of former announcements of this court to the effect that carriers of passengers for hire must exercise a very high degree of care in the rendition of services to them.

If the jury believed the appellee, then it might well have been determined that the appellant's driver of the bus was negligent. Indeed, it would have been surprising if they had not so found under the circumstances stated above. Negligence in this case was a question of fact for the jury. We certainly could not say that it was a question of law under the facts above stated and proof was ample and substantial to sustain the verdict. In that respect no good purpose would be served by an extension of comment in this particular.

The jury having found that there was negligence under the conditions, and the extent of the recovery, the first and second propositions stated must necessarily be disposed of contrary to the contention of the appellant.

The third contention as above quoted from appellant's brief is one, we think, almost wholly without merit. This case had been tried once before without a verdict having been reached. This was a second trial and the witnesses were under a rule of the court and had been given place in a room in charge of an officer who was directed to report if anyone attempted to talk or communicate with any one of the witnesses during the progress of the trial. While the case was on trial, the deputy sheriff who had charge of the witnesses reported to the judge that someone had attempted to talk to the witnesses in violation of the rule. The court announced that fact without naming or making any further statement in regard to the incident and directed the officer to bring the particular person before the court so that he might be examined. The deputy sheriff retired and returned in a few minutes with a Mr. Ward. The jury was then told to retire to the judge's chambers, out of

hearing of the court, and Mr. Ward was then examined in regard to his conduct alleged to have been in violation of the rule. The evidence is not exactly clear, but Mr. Ward, it developed, turned out to be a claim agent though he said he was an attorney, licensed to practice law. He admitted he talked to the witnesses without first obtaining permission to do so. The court finally let him go with a gentle reprimand, if indeed, it amounted to so much as that. It is now urged that the ushering of Mr. Ward into the court-room while the jury was present had a prejudicial effect or influence upon the jury.

The record wholly fails to disclose any statement made by the court, by any officer, or other person in the presence of the jury indicating who Mr. Ward was, or whether he was employed, or what connection he had, if any, with either the defendant or the plaintiff. After the verdict of the jury had been returned, and upon a hearing on a motion for a new trial, appellant offered testimony by calling several of the jurors who testified in regard to their impressions when they saw Mr. Ward brought before the court. The purport of this testimony was that some of the jurors suspected that he was an employee of or at least interested for the appellant company. Why this conclusion was reached by them, counsel have not advised us; but even had they done so, all such statements or arguments in that respect would have been incompetent and improper to consider. We understand, of course, that the trial court, feeling the full responsibility of the position he occupies, is inclined to guard with zealous consideration and most careful scrutiny anything that would tend in the least to reflect upon the purity and integrity of trial proceedings; but the statute should be his guide, and, so long as it provided that, only in those cases wherein the jury may have reached their decision by lot, may they be permitted to impeach the verdict, such statute should be respected and enforced. Pope's Dig., § 1536. We are not criticising the trial court, we are merely pointing out the fact that he was unduly cautious and careful in the light of circumstances that have been developed. The answer to all of

this, however, might have been shortened very much by calling attention to the fact that at the time these incidents took place there was no objection nor exceptions by appellant although the court asked counsel if they desired to make objection to anything said or done. No objection was made by them. They raised this question when they asked for a new trial, but it was then too late. *F. Kiech Mfg. Co.* v. *Hopkins,* 108 Ark. 578, 158 S. W. 981; *Pelham* v. *State Bank,* 4 Ark. 202; *Knight* v. *Wilson,* 186 Ark. 662, 54 S. W. 2d 991. Numerous other authorities might be cited to the same effect, but this is unnecessary.

We have given due consideration to all facts, to the contentions made by the parties, the suggested errors and preservations of the right to follow up and contest on account thereof and upon the whole case we find no prejudicial error, and that is particularly true since there is no question about the amount of the recovery —$750.

Judgment affirmed.