TUCKER, ADMINISTRATOR *v*. FORD.

4-6148 146 S. W. 542

Opinion delivered January 13, 1941.

*W. T. Thompson* and *R. W. Tucker,* for appellant.

*Dene H. Coleman,* for appellee.

GRIFFIN SMITH, C. J. Otis Gould was fatally injured by the gross negligence of an automobile driver. The administrator's suit to compensate the estate resulted in an instructed verdict in favor of Clifford Ford, the defendant. This appeal questions correctness of the court's actions.

The tragedy occurred on St. Louis street in Batesville February 4, 1937. Chester Brown testified that

while he was driving, a car operated at a high rate of speed passed and nearly struck him. It was a dark-colored car and "zig-zagged" back and forth on the street and finally left the pavement and struck a man who was walking an adjacent path.[1]

Bill Walker, police officer assigned to traffic duty, arrived with Ben Kent at the scene of injury fifteen or twenty minutes after Gould was struck. Kent was City Marshal Hugh Gennings' deputy. When Walker and Kent began their investigations Gould had been taken to the hospital. The officers talked with persons who were supposed to have seen the death car, and checked tire patterns on the paving and those leading to the point where Gould was struck. Walker testified that when he and Kent "left the corner" they "knew whom they were going after because of information received." An objection to this statement was sustained.

Walker then testified that he and Kent proceeded to "Jobe's Place" where they found a parked Chevrolet car. An examination disclosed that the car was dirty and dusty except for the right front fender and the right lower part of the cowl. The fender was dented, as was also the cowl near the windshield. These places were clean "apparently where something had been hit." The defendant's objection to the last statement was sustained. The officers found Clifford Ford and Berry Lockart in Jobe's Place in an intoxicated condition. After talking with them, the two were detained. On the way to the city hall the tires on Ford's Chevrolet were compared with markings found near where Gould was struck, and they matched.

C. E. Purcelley was near his service station. He did not know anything about a car striking Gould "until the boys came running there and told me, and I noticed a car passing by going south. I couldn't swear who was

---

[1] Chester further testified: "When the car struck the man I heard an impact which sounded like two box cars bumping together. The body rolled off the back end of the car on the right side and went end over end about three times and fell into the ditch. The car speeded on. . . . The automobile which struck Gould didn't stop, but . . . [went] on down toward the bridge. I didn't recognize the driver and am unable to give a description, except that it was a dark-colored car."

in it. It was a Chevrolet, but I don't know what color it was. I wouldn't have noticed it if it hadn't been driving so fast. I judge it was making sixty miles. It wasn't five minutes until somebody was telling me about the fellow getting run over.''

Ernest Wycough, who worked for Purcelley, saw a car pass Purcelley's place of business at a high rate of speed, but he did not recognize the car. No other car passed until after the injury occurred. The car was light blue, or light gray. Just before this car passed, two other cars raced down the street and turned in front of Purcelley's place. The car described as light blue or light gray was not a dark colored car.

Leonard Wolford testified to having gone to the scene of tragedy and to having given Bill Walker what information he was able to gather. Walker and Kent returned from Jobe's Place with Ford and Lockart. Ford was then driving a Chevrolet car. The witness was asked: ''Did you tell Bill Walker and Bill Kent and Hugh Gennings that Berry Lockard and Clifford Ford had passed you in an automobile a few minutes before the wreck?'' The defendant's objection was sustained.

In directing a verdict for the defendant, the court said: ''In order for the administrator to recover he would have to show that Ford was the driver of the car, and that he struck and killed Otis Gould. It is an unfortunate incident. It has been investigated here for a long time by the state authorities, who have been trying to determine who killed this man. There is no proof whatever to connect this defendant with the driving of this car. There are only circumstances from which you would have to draw your own conclusions to even connect him with the driving of the car. The mere fact that he was at Jobe's Place when Mr. Walker went out there would certainly be no evidence, because others could have been there, and Walker might just as well have picked up somebody else. The one who did this must have come out from town, and must have hit Gould. There is no proof even that Ford drove by this place. The only circumstance is that Ford's car was dented on the fender and cowl. You can go down the street and

find dozens of dented cars. Another circumstance is that [tire patterns found near Gould] were similar to treads on Ford's car. There are hundreds of cars that have similar treads. I think even if the jury returned a verdict on that kind of evidence the court would not uphold it, because you must have some substantial evidence upon which to base a verdict of that kind."

## OTHER FACTS—AND OPINION

It is our view that the trial court correctly instructed a verdict for the defendant. The test is: If the cause had been submitted without further testimony, and the jury had returned a verdict for the plaintiff, and judgment had been rendered on such verdict, would this court say it was predicated upon substantial evidence? The inevitable answer is "no."

The only eye-witness to the tragedy who testified said the car that struck Gould was dark in color. An unidentified car seen by Wycough was light blue or light gray.

The tires on Ford's car were of a make corresponding with a pattern made by the collision car, but there was no evidence that the markings were measured, or that the designs were compared with sufficient accuracy to create more than an inference that they might have been identical.

The same reasoning applies to the dents found on Ford's car. They may have been made in any one of a hundred different ways, but the evidence here is wholly conjectural.

Exceptions were not saved to the evidence excluded on objections by the defendant. Hence, these assignments cannot be considered. [See Appeal and Error, West Publishing Company's Arkansas Digest, §§ 260 (1) and 260 (2), p. 397, and cases there cited.]

It is insisted that error was committed when the court permitted the deputy prosecuting attorney to sit with defendant's counsel during trial, the point urged being that Ford was under indictment on a charge of involuntary manslaughter for the killing of Gould. No

objection seems to have been made during trial. We must therefore assume there was no abuse of discretion. Appellant's abstract does not point to any proof of facts alleged as a basis for this exception.

Another objection is that comments by the court to the effect that the prosecuting attorney's office had been making an investigation and had been unable to determine who was responsible for Gould's death were highly improper. When it is considered that under the court's instructions there was nothing for the jury to consider, it readily appears that the remarks were harmless unless disqualification of the judge had been suggested. This was not done. Nor was he disqualified.

Finally, it is argued that the judgment should be reversed and the cause remanded for a new trial because the court, of its own motion, gave the instructed verdict without affording plaintiff an opportunity to take a nonsuit. When the judge began addressing the jury preliminary to directing a verdict counsel for appellant was not in the court room, but returned before completion of the direction. The record, as abstracted, does not disclose an objection. But, even though there had been an exception, we would not, in the circumstances here reflected, say the court abused its discretion.

Affirmed.