At about 6:30 P.M. on April 23, 1946, the plaintiff, R. A. Lambert, was driving his 1941 Ford automobile, with trailer attached, along U.S. Highway 190 in a westward direction going from Hammond towards Baton Rouge at approximately twenty-five miles per hour. When he arrived at a point approximately three-fourths of a mile west of Albany he perceived a truck belonging to one Szanyi, coming from the opposite direction and, preparing to meet said truck, he put on his parking lights and he alleges that as his car was in the act of meeting the oncoming truck, a heavy gasoline transport truck unit, belonging to Gulf Refining Company and driven by William Cornet, composed of a cab and a large gasoline trailer and tank, attempted to pass him and, as a result, sideswiped his car and trailer and caused the Szanyi truck to go off on the shoulder and to thereafter collide with his Ford automobile and trailer. Plaintiff alleges that the sole cause of the accident was the negligence of William Cornet, the driver of the Gulf Refining tank truck, operating in the line of duty, said negligence being the act of said driver of attempting to pass him while he was meeting the Szanyi truck and driving at an excessive rate of speed. He further alleges that the Gulf Refining Company truck failed to stop after the accident; that as a *Page 147 
result of the accident, he suffered painful personal injuries and that his automobile was almost completely demolished. He sues the driver, William Cornet, Gulf Refining Company, owner of the truck, and The Travelers Indemnity Company, as insurer of Gulf Refining Company, in the total sum of $100,000.00, being $99,000.00 for personal injury, pain and suffering, etc., and $1000.00 for damage to his Ford automobile.
The defense is a general denial of all the material allegations of the petition and it is specifically avered by the defendants that no truck of the Gulf Refining Company was involved in any manner in the collision.
After trial of the case the District Court rendered judgment in favor of the plaintiff and against the defendants in solido in the total sum of $1750.00, being $1000.00 for damage to the plaintiff's automobile and $750.00 for his personal injuries, pain and suffering, etc. The defendants have appealed and plaintiff has not answered the appeal but in his brief prays that the judgment be affirmed.
Defendants before this Court contend that the plaintiff has failed to sustain the burden of proving that the accident and resulting personal injuries and damages were caused by a gasoline tank unit of Gulf Refining Company. That is the main question in the case.
In reviewing the facts involved, we can confine our attention to the main point, as to whether or not the plaintiff has sustained the burden of proof in establishing that the accident was caused by the Gulf Refining Company truck. Obviously the trial Judge so found, but he has not favored us with any written reasons as to why and how he came to that conclusion.
It is clearly shown that the accident did happen at the time and place alleged and that plaintiff's automobile was damaged and that he did suffer a minor injury to his left elbow. It also appears that the accident was occasioned by a heavy truck unit attempting to pass plaintiff's automobile and trailer as he was meeting the Szanyi truck. However, the evidence with reference to the identity of the particular gasoline tank unit involved is not convincing and consists of testimony which is contradictory on many points and vague on others.
Plaintiff himself testified that he did not see any lights on the overtaking transport truck nor did he hear it blow its horn prior to the time it was passing him; that he was unable to state what color the truck was other than that the back end looked muddy; that he did not see any name or other identification aside from a large light on the rear approximately eight inches in diameter; that he was unable to state whether or not the overtaking transport truck came in contact with the approaching Szanyi truck; that he brought his car to a stop as soon as he could and that at that time his car was on the north side of the highway with the trailer jack-knifed across the road, and the Szanyi truck was about 75 feet east of his car in the ditch on the south side of the road. He testified further that immediately after the accident he assisted Szanyi in securing transportation to a hospital in Hammond, since Szanyi was severely injured and that he at that time sent some young boys to Albany to call State Police in Baton Rouge with instructions to come to the scene of the accident and also to stop the hit and run transport truck at the traffic circle near Baton Rouge. After awaiting in vain the arrival of the State Police, plaintiff Lambert stated that he checked with Don B. Herrin with regard to any of his trucks which may have been on the road and then called Mr. Renaudin of the Gulf Refining Company for the purpose of checking trucks of that company which may have been on the road at the time of the accident. Renaudin informed him that they had a truck on the road at about that time and accordingly, Lambert met Renaudin at the Gulf plant in Baton Rouge and examined the transport truck there. He states that he found fresh rubs and scratches all the way down the side of the tank on the right side and on the right rear trailer wheel. He states further that he is positive no other transport trucks passed the scene of the accident proceeding towards Baton Rouge between the time of *Page 148 
the accident and 10:00 P.M. He further testified that after the accident he found little white specks on his car at the top of the door along the little seam or gutter and that these specks or flecks were at a height which matched perfectly the height of the scratches he detected on the right side of the Gulf tank. He admits that his examination of the Gulf tank and truck was confined to the right side thereof and could not testify as to scratches on any other part of said truck and tank. He also admitted that subsequent to his examination of the Gulf truck, he made further investigation regarding transport trucks on the highway on the evening in question, and also admitted that there were some five or six towns between Albany and Baton Rouge and several side roads leading off the highway.
Szanyi, the other victim of the collision, testified that he was driving a pickup truck belonging to his father-in-law, Steve Novak, going east on Highway 190 and that the accident happened as related by plaintiff; he states that as he saw the accident would happen, he pulled over to the right side off the pavement to give the transport truck clearance room and that as the accident appeared imminent, he turned his head so as not to get glass in his face but held on to the wheel. In view of these circumstances he could not tell what vehicle hit him and that he only saw the tank truck and trailer before the accident. In other words, he merely got a glimpse of the truck and trailer before the accident and didn't notice the color thereof but that it appeared to be a dark color and that he noticed no markings on it. Since the approaching transport truck had no lights, and at the time of the accident the sun had gone down and it was getting dark, it is apparent that Szanyi could not describe accurately the transport truck under the circumstances.
Mike Erdy, witness for plaintiff, testified that he arrived at the scene of the accident shortly after its occurrence and he found the Szanyi green Ford pickup truck in the ditch on its right hand side and that he saw tire marks which clearly showed where the right wheels of the pickup truck left the road and went unto the right shoulder. He further testified that the pickup truck was all banged up on the left side with damage to the front door, headlight and windshield.
Joe Ponczak testified that he lived near the scene of the accident and was in his berry field approximately 500 feet from the highway on the north side when the accident occurred. This witness admits that between him and the accident there was a wooded area and that he did not actually see the accident. He states, however, that he heard the noise of the accident and that thereafter he saw a large transport truck proceeding towards Baton Rouge; that at first he thought the truck had slowed down and would stop, but thereafter picked up speed and kept going. He stated that he noticed that the gasoline truck and trailer were gray but did not notice whether or not the truck had its lights on and could not see any writing or signs on the truck. He was cross-examined with regard to having discussed the accident with Henry Perret, adjuster for The Travelers, at which time, from the cross-examination, he was supposed to have told Perret that he did not know the color of the truck. He insisted that he told Perret that the truck was gray. When questioned with reference to the color of other vehicles involved this witness stated that he could not recall the color of Novak's truck but that as he recalled, Lambert's car was a grayish color (Lambert's car in reality was black).
Mrs. Joe Ponczak testified very much to the same effect as her husband except that she did not go to the scene. She stated that she was in the berry field about 500 feet away and that she saw the transport truck going in the direction of Baton Rouge; that the color of the truck was gray but she was unable to state positively about lights or about lettering or signs on the gasoline truck.
The defendant, William C. Cornet, was first called on cross-examination and later on direct examination. He stated that he was thirty-four years old and had been driving a transport type truck of the type herein involved for some 17 or 18 years. He admitted that he was the driver of the Gulf Refining Company truck allegedly involved in this accident and that on the day *Page 149 
of the accident he left Hammond at 6:30 P.M. and arrived at Baton Rouge at 8:30 P.M. He positively denied that his transport truck was involved in any accident and also positively stated that he did not pass between two vehicles going in opposite directions on his trip from Hammond to Baton Rouge. He testified further that his transport unit was battleship gray and the same equipment driven on a different shift by one Harold Williams. He further states that to his knowledge on that particular route, other truck units of the same type were operated by Capital Transport Company, D. B. Herrin and others; that the Capital Transport Company units had yellow trailers with tractors of varying colors and that the Herrin trucks were painted red with white letters; that, in addition to these gasoline lines, there were various milk trucks of a type similar to the gasoline trucks; that his truck had lettering in black on the hose panel on both sides "Inflammable Gas" and on the back end "Gasoline — Dangerous — Inflammable", and had "Gulf Refining Company" on both cab doors of the tractor.
Cornet also identified various photographs made by Francis Julias, professional photographer, who also testified with reference to these photographs. The photographs and testimony with reference thereto show that the unit driven by Cornet was as testified by him, battleship gray.
Mr. R. G. Renaudin, Baton Rouge agent for the Gulf Refining Company, testified that on the evening of April 23, 1946, Lambert called at his home and stated that a yellow truck had hit him coming out of Hammond; that he informed Lambert that Gulf did not have a yellow truck coming out of Hammond but that there was a Gulf truck on the road at about the time stated by Lambert; that he and Lambert went to the Gulf plant and examined that truck and Lambert had pointed to some scratches found on the right side and a rub mark on the right rear trailer tire as indicative that the truck had been the one which struck him. Renaudin further testified that this truck and trailer were battleship gray and had "Gulf Refining Company" and "Truck 19745" written on both doors. He further identified photographs D-3 through D-10 as being pictures of a Gulf Refining Company truck and trailer, stating that the trailer shown was not the identical trailer used by Cornet on April 23, 1946, but was just like it except for the new paint (orange) and the "Gulf" signs on the sides and the back. He denied that any fresh marks were found on the tank unit at the time of his examination by him and Lambert but admitted that there were marks not only on the right side, but also all around the unit which in effect were old marks.
With reference to photographs, there was some argument with reference to D-3 through D-9 to the effect that the trailer therein shown was not identical to the trailer used on April 23, 1946. Later the original trailer was located and photographs M-1 through M-5 were made and these appear to verify the similarity.
Hooper Kemp, Chief Clerk of the Gulf Refining Company, stated that he was responsible for the operation and maintenance of the company trucks and was familiar with the equipment driven by Cornet on April 23, 1946, which was the same equipment driven by Harold Williams on another shift that day. He stated that Renaudin told him about his conversation with Lambert and that, as a result, he inspected the transport truck when it came back to the plant some time before noon on April 24, 1946 and that he found only a tire rub on the right rear trailer wheel which was the kind of mark made by the wheel rubbing against a curb and was not an unusual mark for that type of equipment. He also stated that there were old marks and scratches on the unit but no fresh marks or scratches indicating a collision.
Two eyewitnesses to the collision were produced by the defendant, to-wit Norman Gill, Sr. and Norman Gill, Jr. These witnesses testified very much to the same effect; that they lived about 100 feet south of the highway and some 250 or 300 feet west of where the accident occurred; that the view from their house was clear and that they saw the transport truck going towards Baton Rouge after they heard the crash and that in effect it was a yellow *Page 150 
color. Gill, Sr. testified correctly with reference to the color of the Lambert car, black, and with reference to the pickup truck. We are particularly impressed with the testimony of Gill, Jr. because he was clearly in a position to see the transport truck, and his testimony was in no way shaken, in spite of vigorous cross-examination.
Henry Perret, Adjuster for The Travelers, testified with reference to his investigation of the accident. He stated that he assisted Kemp in taking the measurements of the transport truck and passenger car at the Gulf plant in Baton Rouge and further that he called on Joe Ponczak on October 30, 1947 and discussed the accident with him. He stated that Ponczak told him what he knew about the accident but further stated that while he saw this type truck go by, he could not tell its color or give any other identification thereof; that Ponczak also gave him the name of Norman Gill, who lived right across the highway, and that consequently he then went over to talk with Gill. It is contended that Perret had paid Gill money to testify for the defendants. This, he vigorously denied, although he admitted that he promised Gill that he would be refunded his expenses for coming over to testify.
The testimony of Harold Williams was taken by deposition and is very similar to that of Cornet. He stated that on April 23, 1946 when he took the truck out, there were scratches on the truck which had been there since he had been employed by Gulf Refining Company in Memphis, Tennessee, stating that it was a common thing for a transport or any truck traveling up and down the highway to get scratches on it when turning into terminals. He states that on April 24, 1946, he drove the same truck that was supposed to have been in the accident on the night of April 23, 1946; that he examined the truck, as he did every morning, and found that there was at that time no difference at all in its condition. With reference to the color of the truck, he too states that it was battleship gray.
Steve Bailey, Claim Adjuster for Travelers, testified that he investigated the accident after suit was filed and talked with Cornet, Renaudin, State Police, Hooper Kemp and Harold Williams. His testimony has little bearing on the case except it is shown by it that both he and Perret went to work for Travelers after the date of this accident.
On rebuttal the plaintiff produced the testimony of state trooper L. E. Wright, who testified that on June 5, 1946, Cornet wrote a statement which is in evidence as Exhibit P-2 with reference to the accident. Trooper Wright was unable to state whether at that time Cornet denied that he had been involved in the accident and admits that he never asked Cornet whether he had been involved in the accident. He identified a photostatic copy of a report dated June 8, 1946, addressed to Captain R. M. Walker, as having been written by him and signed by himself and Trooper Earl Seguin. This report stated that Cornet did deny being involved. However, Trooper Wright was unable to state to whom Cornet had made the denial and stated that it was not made to him.
Also on rebuttal plaintiff called Vic Anderson, Marshal of the City Court of Hammond, who identified some note sheets handed to him as containing notes in his own handwriting. He then testified from the notes that on May 31, 1946, Trooper Hayden, Attorney Sims, and he, had gone to the Gulf Bulk plant in Hammond, where they talked with William Cornet. Anderson related that Cornet admitted that he had driven the same truck on the highway on April 23, 1946, but stated that he had not been involved in any accident. Witness further stated that a short time later Cornet remarked to him privately that if he had been in the accident he didn't know anything about it.
A review of the testimony reveals that there is serious dispute with reference to the identity of the transport truck which appears to have been involved and probably caused the accident on which this suit is based. It can probably be said that the plaintiff has proved that the accident was caused by a transport truck. The burden of proof which rests upon him demands that he prove by a preponderance of evidence the particular transport truck involved. *Page 151 
The strongest point in plaintiff's favor is his contention that the Gulf Refining Company truck was the one involved in the fact that it was on the highway and passed the scene of the accident at about the time of its occurrence. This, plus the testimony of Lambert, to the effect that no other transport truck passed the scene of the accident, subsequent to the accident, up until 10:00 P.M., may have been the factors which convinced the trial judge. However, it will be noted that Lambert was unable to describe the truck involved and that even after he saw the Gulf Refining Company truck on the night of the accident and saw the alleged scratches and rubs thereon, he was still unconvinced and continued his investigation. His two star eyewitnesses, Mr. and Mrs. Ponczak, saw the truck at a distance of at least 500 feet and while they both testified that the truck was gray in color, their testimony is not very convincing. Ponczak, according to Perret, told him that he could not tell what color the transport truck was and Perret's testimony is hard to disbelieve, particularly in view of the fact that it is difficult to believe that Mr. and Mrs. Ponczak could tell the color of this transport truck at a distance of 500 feet at dusk.
On the other hand, you have the positive testimony of Norman Gill, Sr. and Norman Gill, Jr. that the truck they saw traveling towards Baton Rouge was yellow in color and these two witnesses were only 100 feet away with a clear view from the truck.
It may be noted that counsel for plaintiff argues that even should it be found that the transport truck did not come in direct contact with the Lambert car on the Szanyi truck, if it be found that it did attempt to pass these two vehicles while they were meeting, it should be concluded that the emergency which resulted in the accident was caused by the truck and that therefore, liability should be placed on the defendants. This argument, while sound, is somewhat contradictory to Lambert's testimony that he definitely found fresh scratches and rubs on the truck showing actual contact. Nevertheless, the fact still remains that in any event it must be concluded, in order to affirm this judgment, that it has been shown by the preponderance of the evidence that this particular truck unit was the one involved.
In view of the positive testimony of Mr. Cornet, the driver, of Mr. Renaudin, the Gulf agent who examined the truck on the night of the alleged accident with Mr. Lambert, of Mr. Kemp, Chief Clerk of Gulf, who also examined it, and Mr. Williams, the other driver of said truck, and of the testimony of Norman Gill, Sr. and Norman Gill, Jr., with reference to the color of the transport truck in the collision being yellow (it being shown that the Gulf truck was battleship gray), and in view of the further circumstance that while this truck was photographed and examined in the presence of State Police officers, that none testified with reference to fresh scratches and rubs indicating a collision, it would seem that the evidence preponderates to the effect that the Gulf truck was not involved in the collision instead of preponderating to the effect that it was. In any event, we do not feel that it can be said that the plaintiff has proved to a legal certainty that this particular truck was the one involved in the collision. The best that can be said in his favor is that he has shown a possibility or probability that this truck was the one involved. That is not sufficient to sustain the burden resting upon him and we must therefore reverse the judgment appealed from and dismiss plaintiff's suit.
For these reasons, it is ordered that the judgment appealed from is hereby reversed, annulled and set aside and plaintiff's suit is dismissed at his costs. *Page 152