BOURQUE *v.* EDWARDS.

5-2226                                                        339 S. W. 2d 436

Opinion delivered October 31, 1960.

*William S. Walker,* for appellant.

*J. Nelson Truitt,* for appellees.

PAUL WARD, Associate Justice. In this case, wherein appellants purchased a farm from appellees, the disputed question is whether a butane gas tank was included with the property as contended by appellants. The issue was joined in a replevin suit in the Circuit Court brought by appellees to get possession of the tank. The trial judge, sitting as a jury, found in favor of appellees, ordering the tank delivered to appellees and awarding damages against appellants in the amount of $4.00. Appellants now prosecute this appeal for reversal.

Except for the testimony later to be discussed the facts are not in dispute.

Appellees listed for sale their 76 acre farm with Robert W. Read, a real estate agent associated with the Strout Realty Company. On September 12, 1959, Read wrote a letter to appellants who lived in Houston, Texas. This letter, which described the farm relative to location, buildings, tillable soil, price and terms, contained this sentence: "Electricity and butane in." The result was that appellants and appellees entered into a Sales Agreement on September 22, 1959, and a down payment of $1300 was made by appellants without them having seen the property. Among other things, the agreement provided that the deed to appellants would be delivered on or before the 15th day of October, 1959, and that possession would be given on October 1, 1959. Appellants took possession of the property on October 1, 1959, and soon thereafter this controversy arose over the ownership and possession of the tank. The 250 gallon butane tank was located on top of the ground several feet from the house and was connected thereto by a metal pipe. The principal contentions of appellants are that the appellees are bound by the acts and representations of their real estate agent, Mr. Read; that having acted upon the written representation of said agent appellees cannot be heard to deny or to vary those representations, and; that the trial court erred in interpreting the law on what constitutes fixtures, as between vendor and vendee. On the other hand, appellees contend that on the first day appellants took possession and one day before the deed was signed it was made known to appellants that the butane tank did not go with the property and that appellants agreed to this and tacitly consented by their silence therein, and that therefore they are estopped now to contend otherwise. The testimony in this connection is in conflict.

Mrs. Edwards, one of the appellees, stated that she met appellants at the farm on October 1st in the presence of Mr. Read and Mr. and Mrs. Houston; that she told appellants the butane tank didn't go with the place;

that later that day she saw Mrs. Bourque and told her again that the tank didn't go with the place; that Mr. Read said he thought the tank might have "went," but that she told him no, and; that Mr. and Mrs. Bourque did not say anything. She also stated that early that day appellants didn't say anything when Mr. Edwards told them the tank didn't go, and at that time no deed had been executed. She also stated that she refused to sign the deed until she heard Mr. Read say the tank didn't go. The deed was signed the following day. On cross examination she further testified that Mr. Read stated that he knew the tank didn't go; that he thought the tank was listed but he found out later it was not. Harley Houston testified in substance: He was present on the occasion mentioned by Mrs. Edwards; they talked about the tank and Mrs. Edwards said the tank didn't go with the place but didn't hear Mr. Bourque say anything about it. Mrs. Harley Houston testified that she was present when Mrs. Edwards told them the tank didn't go with the place and that she didn't hear the appellant say anything. Mr. Read testified that he was present at the meeting described by Mrs. Edwards and that he didn't know whether Mr. and Mrs. Houston were there or not, but he did hear Mrs. Edwards say that the tank didn't go; that the deal was consummated in his office later when Mr. and Mrs. Edwards signed the deeds, and they said at that time the tank didn't go. On cross examination he stated that nothing was said about the tank when the place was listed for sale but up until the above conversation took place he assumed that the tank did go with the place.

Mr. Bourque testified that he also relied upon the representations made in the letter of September 12th and that he never did agree that the tank didn't go. He further stated that Mr. Edwards did not tell them that the tank didn't go on the morning of the 2nd—that the tank was not mentioned that morning—and that he didn't recall it being mentioned in Mr. Read's office that evening. He further stated that he didn't know there was a tank until he saw it on the morning of October 2nd.

Mrs. Bourque stated that they relied upon the representations made by the agent's letter dated September 12th.

John Poyner, the Justice of the Peace before whom this case was first tried, stated that at the hearing before him Mr. Bourque stated that while they were in that office and before the deed was signed it was stated to him that the tank didn't go.

Without entering upon a legal discussion of the circumstances under which an attachment to a house becomes real estate, we have concluded that there is substantial evidence to sustain the findings of the trial judge "sitting as a jury" to the effect that it was not the intention of the parties at the time the deed was executed to include the butane tank. It was the province of the judge to evaluate the testimony and his findings will not be disturbed as they are supported by substantial evidence. In this case we think there was such evidence.

The objection might be made, though it is not specifically made by appellants, that parol evidence was not admissible to vary a written instrument—the deed in this case. We think, however, that appellants are in no position here to benefit by such rule for several reasons. The evidence tending to show the tank was not included in the transfer was introduced without objection, and this court has said many times, in effect, that such evidence cannot be challenged for the first time on appeal. See: *Gage* v. *Melton,* 1 Ark. 224; *Heaslet* v. *Spratlin,* 54 Ark. 185, 15 S. W. 461; *Lisko* v. *Uhren,* 130 Ark. 111, 196 S. W. 816; *Missouri Pacific Transportation Co.* v. *Moody,* 199 Ark. 483, 134 S. W. 2d 868; and *Tucker* v. *Ford,* 201 Ark. 680, 146 S. W. 2d 542.

Also the facts and circumstances of this case are such as to indicate the butane tank was a proper subject for a side agreement. In the first place the letter relied on by appellants stated that "butane" was "in"—nothing was said about a tank—and the parties themselves appear to have treated the tank as personal property since it was separated from the house. Under such circumstances we think the holding by this court in *Magee* v.

*Robinson,* 218 Ark. 54, 234 S. W. 2d 27, supports the conclusion we have already reached. There the court, in discussing the admissibility of parol evidence to vary a written instrument in connection with a "side agreement," the court approved this statement:

"Though this assumption in most cases conforms to the facts, and the certainty attained by making the rule a general one affords grounds for its existence, there are cases where it is so natural to make a separate agreement, frequently oral, in regard to the same subject-matter, that the Parol Evidence Rule does not deny effect to the collateral agreement. This situation is especially likely to arise when the writing is of a formal character and does not so readily lend itself to the inclusion of the whole agreement as a writing which is not limited by law or custom to a particular form. . . ."

It follows from what we have said that the judgment of the trial court must be, and it is hereby, affirmed.

Affirmed.