499 So.2d 766 (1986)
James RUCKER, Udell Stubbs Trucking Company and Magna Corporation
v.
Brenda Faye HOPKINS, Widow of Charles Edward Hopkins, Deceased.
No. 55951.
Supreme Court of Mississippi.
December 3, 1986.
*767 Charles G. Copeland, James R. Moore, Jr., Copeland, Cook, Taylor & Bush, Jackson, for appellant.
L. Joe Lee, James B. Greenfell, Lee & Greenfell, Jackson, Guthrie T. Abott, Oxford, for appellee.
Before ROY NOBLE LEE, P.J., and DAN M. LEE and PRATHER, JJ.
ROY NOBLE LEE, Presiding Justice, for the court:
James Rucker, Udell Stubbs Trucking Company and Magna Corporation (Mississippi Steel) appeal from a judgment entered in the Circuit Court of Hinds County, Mississippi, in favor of Brenda Faye Hopkins, widow of Charles Edward Hopkins, Deceased, for four hundred ninety-six thousand seven hundred eight dollars ($496,708) on account of the wrongful death of Charles Edward Hopkins. Rucker, Stubbs and Mississippi Steel appeal to this Court and assign eleven (11) errors in the trial below. We reverse and remand for a new trial.

Facts
On Wednesday morning, July 28, 1982, between 4:30 and 5:30 a.m., Harry Hopkins was driving a two-tone grey Buick automobile in a northerly direction on Flowood Drive in Flowood, Rankin County, Mississippi, accompanied by his brother, Charles Hopkins. Harry Hopkins was employed at Continental Can Company, located on Flowood Drive, and when the Hopkins were about four hundred (400) yards south of the Continental Can plant, they met and were passing a southbound truck. An object, later identified as a large truck tire, inflated on a rim, struck the passenger side roof of the car, collapsing the roof and windshield, and resulting in the instantaneous death of Charles Hopkins.
Harry Hopkins blew his car horn several times in an effort to stop the truck after it *768 passed, without success. He examined his brother and then drove to the Continental Can plant for help. Flowood police Officer Truitt Calhoun responded to the emergency call from the Continental Can plant and medical aid was rendered, but Charles Hopkins was pronounced dead. Harry Hopkins could give no information about the passing truck other than that it was a flatbed truck. He was taken by ambulance from Continental Can to the Mississippi Baptist Hospital, where he was sedated with medication, leaving the hospital about noon on the same day. He talked to the Flowood Police several times throughout the day, and still was unable to give any information about the passing truck except that it was a flatbed truck.
In November, 1982, Hopkins no longer claimed to know only that the truck was a flatbed truck. By then he could positively identify the passing truck as a Mississippi Steel truck, basing his identification on the fact that he had read the words "Mississippi Steel" on the side of the truck and observed the tire on top of a load of steel as the Hopkins car and the truck were passing each other. That truck was owned by Udell Stubbs Trucking Company and driven by James Rucker, who was employed by Udell Stubbs, and the vehicle was leased to Mississippi Steel. Rucker is a professional truck driver with a great deal of experience in driving trucks.
When Rucker arrived at the Mississippi Steel mill on the morning of the accident, his truck was loaded and parked in the lighted parking lot next to the security post. His assignment that day was to deliver the truckload of steel to a customer in Little Rock, Arkansas. Rucker performed his daily routine before leaving the premises, i.e., checked his oil, bumped his tires (a method of checking the tires), examined his trailer for loose objects, and used chains to secure the load. According to him, there was no tire or any other loose object on his load of steel. He had one spare tire, and it was chained to the tire rack underneath the right side of the trailer.
After securing his load, Rucker drove past the security post headed toward Flowood Drive. The security guard, who passed Rucker out of the plant, observed his truck and verified that there was no tire on the load of steel. Rucker drove south on Flowood Drive two and one-half (2 1/2) miles to Highway 80, which was the route for him to take on leaving Flowood Drive. Rucker testified he left the Mississippi Steel premises at approximately 4:50 or 4:52 a.m. He passed one vehicle, a two-tone green car, between the Mississippi Steel plant and Highway 80. Before turning onto Highway 80, he stopped and again checked his binders and tires. His spare tire was still resting in the rack underneath the truck. When he returned from his destination, Little Rock, Arkansas, later that afternoon, he still had the same tires he left with that morning. On the way back from Little Rock, Rucker stopped in Pine Bluff at a place which does work on truck tires. He developed some slight trouble in his truck and called Udell Stubbs who told him that a man had been killed by a truck tire on Flowood Drive that morning.
The tire which killed Charles Hopkins was a General tire 1000/20. Stubbs had purchased approximately sixty (60) such General tires in 1981, and Rucker's truck was equipped with ten (10) General tires on January 28, 1982. There are a number of industrial plants along Flowood Drive, and large trucks, including flatbed trucks, frequent the area and use Flowood Drive.

Questions

I.

THE LOWER COURT ERRED IN REFUSING DEFENDANT'S MOTION FOR A DIRECTED VERDICT AS THERE WAS NO CREDIBLE EVIDENCE TO SUPPORT A FINDING THAT RUCKER'S TRUCK WAS INVOLVED IN THE ACCIDENT.
Appellants contend (1) that the testimony of Harry Hopkins was contradicted by former statements, (2) inconsistent, (3) contrary to physical possibilities and (4) *769 should be rejected by the court. The plaintiff has the duty in a tort case to prove by a preponderance of the evidence, e.g., with reasonable definiteness, that the party charged with the tort is the one actually responsible for it. In McCain v. Wade, 181 Miss. 664, 180 So. 748 (1938), the Court said:
But in this class of cases, as in other actions in tort, the plaintiff must show with fair or reasonable certainty or definiteness that the party charged is the party actually responsible for the wrong. It is not enough that this shall be left to conjecture or to inferences so loose as that it cannot be dependably told where conjecture ceases and cogent inferences begin.
181 Miss. at 668, 180 So. at 749. See also Western Geophysical Company of America, 253 Miss. 14, 174 So.2d 706 (1965); and Magnolia Petroleum Company v. Williams, 222 Miss. 538, 76 So.2d 365 (1954).
On the day of the accident, Harry Hopkins was questioned extensively at the scene and throughout the day about his observation of the passing truck, and he could give no information which would assist in the investigation of the accident. He was questioned on two separate occasions by Flowood Police Chief, Gary Rhoads, between 8 and 9 a.m. and later around 2 p.m. He was unable to suggest an identity of the truck; or to tell Chief Rhoads the color of the truck or any name or any identifying mark on the truck; or whether it was light or dark in color, and loaded or unloaded. Hopkins wanted to know whether or not the police had any leads, whether they had been able to determine the name of the truck company or at least the color of the truck. On the day of the accident, Hopkins returned to the scene and helped search for the object (tire) which struck his car. He retained an attorney to pursue his own personal injury claim and employed a private investigator to help identify the truck and attend to business in connection with the accident.
Harry Hopkins gave a deposition November 15, 1982. He testified that he knew the truck belonged to Mississippi Steel because he glanced quickly at the truck as it was passing and read the words "Mississippi Steel" written on the truck. At trial, Hopkins testified he didn't remember what he told the police because he was still in shock and under sedation. Suffice it to say, Hopkins' trial testimony was inconsistent with, contradicted by, his deposition testimony and by statements made on the day of the accident, and thereafter, and was impeached.
In Truckers Exchange Bank v. Conroy, 190 Miss. 242, 199 So. 301 (1940), the Court held that a jury should not be permitted to consider evidence where it is manifest that no reasonable man engaged in a search for truth, uninfluenced by proper motives or considerations would accept or act on the evidence.
In Teche Lines v. Bounds, 182 Miss. 638, 179 So. 747 (1938), the Court held that incredible testimony and the testimony of a plaintiff which was so clearly and manifestly improbable should be disregarded. This also applies to testimony that has been clearly impeached. Also, see Elsworth v. Glindmeyer, 234 So.2d 312 (Miss. 1970); and Yazoo & M.V.R. Co. v. Lamensdorf, 180 Miss. 426, 177 So. 50, 178 So. 80 (1938).
In Jakup v. Lewis Grocer Co., 190 Miss. 444, 200 So. 597 (1941), the identity of a truck involved in an accident on a dusty gravel road was the principal question before the Court. Jakup relied upon a witness Page who was following behind Jakup to prove the identity of the truck involved. Page testified he was traveling about 40 mph, that the truck was traveling about 50 mph, that he saw a tarpaulin on the truck and that, even though it was loose and floppy, he was able to read the inscription "Lewis Grocer Company." After the accident, he signed a written statement setting forth:
"I saw the truck as it was coming toward me, and it was a red truck with a tarpaulin over it, flat. I didn't see any sign on it, and don't know who it belonged to, *770 nor what was in it. I didn't notice it closely, as it was going fast and it was very dusty."
190 Miss. at 450, 200 So.2d at 599.
The lower court granted a peremptory instruction for the defendant. On appeal, this Court said:
Could the court safely accept and act upon the isolated statement by the witness Page that, although there was nothing then known to him to put him on the alert as to it, he read the contents of a sign on a flopping tarpaulin covering a truck approaching him at fifty miles an hour when he was going in the opposite direction at forty miles an hour in a deep dust and when he saw nothing else about the truck even as to its color, and when all the other witnesses who saw it and who had an equal or better opportunity and more of an occasion to observe it saw more of the details of the truck than he did, yet did not pretend that they could in such circumstances read the sign,  and this even though we lay aside his contradictory statement made soon after the happening?
We concur with the learned and experienced trial judge that the statement could not be safely accepted and acted upon. Courts are not required, they are not permitted, to lay aside common sense and the exercise of that critical judgment which years of experience with witnesses will produce, and accept as true any and every statement which some witness may be so bold as to make, simply because the witness, who has, in all reasonable probability, substituted an after-acquired imagination for facts, has sworn to it.
190 Miss. at 453, 200 So. at 600.
From other jurisdictions, see Southwestern Transportation Co. v. Chambliss, 197 Ark. 865, 125 S.W.2d 123 (1939); Babb v. American Mutual Liability Ins. Co., 50 So.2d 95 (La. App. 1951); Morris v. Twig, 190 Md. 324, 58 A.1d 719 (Md. App. 1948); Tucker v. Ford, 201 Ark. 680, 146 S.W.2d 542 (1941); Lambert v. Travelers Indemnity, 42 So.2d 146 (La. App. 1949); Pusey v. Davison, 340 So.2d 1073 (La. App. 1976); Fogleman v. Piggly-Wiggly Operators Warehouse, 347 So.2d 75 (La. App. 1977).
In Paymaster Oil Mill Co. v. Mitchell, 319 So.2d 652 (Miss. 1975), this Court held:
We have held many times that in passing on a motion for a directed verdict the court must look only to the testimony adduced for the plaintiff and accord truthfulness to it and indulge all favorable inferences that could be drawn therefrom, and if either is sufficient to support a verdict, then the motion for a directed verdict should be overruled.
319 So.2d at 655. See also Georgia-Pacific Corporation v. Blakeney, 353 So.2d 769 (Miss. 1978); White v. Thomason, 310 So.2d 914 (Miss. 1975); Williams v. Weeks, 268 So.2d 340 (Miss. 1972); Clark v. Luther McGill, Inc., 240 Miss. 509, 127 So.2d 858 (1961); Sumrall Motor Co. v. Creel, 158 Miss. 262, 130 So. 151 (1930).
Cases occur in which the trial judge should permit the issue of liability to be passed upon by a jury even though the evidence is meager and the verdict may be contrary to the overwhelming weight of the evidence. In Cronier v. Denson, 198 So.2d 252, 253 (Miss. 1967), quoting New Orleans & Northeastern Railroad v. Thornton, 247 Miss. 616, 622, 156 So.2d 598, 600 (1963), quoting Buntyn v. Robinson, 233 Miss. 360, 362-363, 102 So.2d 126, 127 (1958), the Court said:
"We do not decide whether the evidence is overwhelming in favor of appellee. That question is not before us. Even where the evidence is such that a judgment for the adverse party would have to be set aside as being contrary to the overwhelming weight of the evidence, it does not necessarily follow that a party is entitled to a directed verdict."
See also Luther McGill, Inc. v. Watkins, 250 Miss. 734, 738, 168 So.2d 309, 311 (1964); Shaw v. Phillips, 193 So.2d 717, 718 (1967); Dehmer v. Hederman, 252 Miss. 839, 844, 173 So.2d 924, 925, 175 So.2d 136 (1965); Meaut v. Langlinais, 240 Miss. 242, 248, 126 So.2d 866, 868 (1961); and Milam v. Gulf, Mobile & Ohio, 284 *771 So.2d 309, 316 (1973) (Walker, J., Dissenting).
The appellants did not assign as error here that the verdict is contrary to the weight of the evidence. Certain evidence was admitted and excluded which may have had an effect on the disposition of this case before a jury and the lower courts. On retrial of the case, with a full and proper development of the facts and evidence, a different disposition may, or may not, result.

II. THE LOWER COURT ERRED IN ADMITTING THE OPINIONS AND HEARSAY TESTIMONY OF CHIEF RHOADS AND SERGEANT MULLINS.
The appellee called as witnesses Chief Rhoads and Sergeant Mullins of the Flowood Police Department. Chief Rhoads testified that numerous industries located in Flowood use large trucks, including flatbed trucks, which travel Flowood Drive. Over objection of the appellants, the lower court permitted Chief Rhoads to give his opinions and conclusions, based on hearsay evidence and his investigation of witnesses, that only one truck was dispatched from the companies in the vicinity of the accident at 4:45 a.m. and that it was a Mississippi Steel truck.
Sergeant Mullins testified over objection that he investigated to determine what trucks were in the vicinity and that of five companies he investigated, they had no trucks in the area at the time of the accident.
This testimony of the police officers was highly prejudicial and improper, and constitutes reversible error. Swaggart v. Haney, 363 So.2d 251 (Miss. 1978).

III. THE LOWER COURT ERRED IN SUBMITTING THE CASE TO THE JURY AS THE PLAINTIFF FAILED TO PROVE NEGLIGENCE.

IV. THE TRIAL COURT ERRED IN GRANTING INSTRUCTION P-13.
The entire case was tried upon the sole issue of identification of the truck from whence the tire and rim were charged to have come. There was no evidence as to where the tire was secured or whether or not it was loose without any lashings. There is no evidence of the manner in which the truck driver was negligent. Appellee borders upon the doctrine of res ipsa loquitur, which was not developed. The appellees must prove by competent evidence the negligent act or acts which contributed to or caused the tort. J.C. Penney Co. v. Sumrall, 318 So.2d 829 (Miss. 1975); Callender v. Cockrell, 217 So.2d 643 (Miss. 1969).
Instruction P-13 follows:
The Court instructs the jury that if you find from a preponderance of the evidence that:
1. On the morning of July 28, 1982, a truck owned, maintained and/or driven by the Defendants James Rucker, Udell Stubbs Trucking Company, and Magna Corporation (formerly Mississippi Steel Company) was carrying a spare tire which was not properly tied down and/or secured to the truck, and as a proximate result of the negligent actions or inactions, if any, of said Defendants, the tire bounced freely off the truck and collided into the car in which Charles Edward Hopkins was a passenger; and/or
2. Any such acts or failure to act were the sole and proximate cause or contributing cause of the death of Charles Edward Hopkins;
Then and in that event, the Defendants were guilty of negligence and it is your sworn duty so to find and the verdict shall be for the Plaintiff, Brenda Faye Hopkins, widow of Charles Edward Hopkins, deceased.
As discussed above, it is questionable whether this instruction followed the evidence. There was no evidence as to how the tire was secured, or whether it was, except for the testimony of Harry Hopkins, who said that the tire was on top of the steel and fell off onto the automobile (this testimony was contradicted). On retrial, *772 proper instructions following the evidence may be granted.

V. THE LOWER COURT ERRED IN DECLINING TO ADMIT APPELLANT'S PHOTOGRAPHS OF THE TRUCK AND TRAILER DRIVEN BY JAMES RUCKER.
Rucker testified that the photographs, which were not admitted by the lower court, are of the truck and trailer loaded with rebar steel as they were at the time of leaving Mississippi Steel on the morning of July 28, 1982. Further, he testified, without contradiction, that the pictures were fair and accurate representations of the truck and load with which he left from the Mississippi Steel plant and went to Little Rock, Arkansas.
The appellees objected on the ground that the photographs were cumulative, were self-serving, and did not accurately represent the truck on the date of the accident.
The photographs should have been admitted. Photographs of the unloaded truck of Rucker and similar trucks were offered by appellee and admitted, although not objected to.

VI. THE LOWER COURT ERRED IN GRANTING PLAINTIFF'S INSTRUCTIONS P-9 AND P-10.
The Instructions P-9 and P-10 follow:
Instruction P-9
The Court instructs the Jury that if you should find from the preponderance of the evidence, if any, that Defendant James Rucker was guilty of negligence and further find that the said James Rucker was acting within the scope of his authority as the agent and representative of Defendants, Udell Stubbs Trucking Company and Magna Corporation (formerly Mississippi Steel Company), then the Defendants, Udell Stubbs Trucking Company and Magna Corporation (formerly Mississippi Steel Company) are liable for the negligence, if any, of the said Defendant, James Rucker; and the Court further instructs you that the said Defendant James Rucker is also liable for his own negligence, if any, as shown by the preponderance of the evidence of the case, if any, and if you believe by the preponderance of the evidence in this case that the negligence of James Rucker, if any, proximately caused or contributed to the death of Charles Edward Hopkins, then it is your sworn duty to find for the Plaintiff against all Defendants.
Instruction P-10
The Court instructs the Jury that if you believe from a preponderance of the evidence in this case that Udell Stubbs Trucking Company and Magna Corporation (formerly Mississippi Steel Company), through its agents, servants and employees, were negligent so that such negligence, if any, proximately caused or proximately contributed to the death of Charles Edward Hopkins, then you may return a verdict for the Plaintiff against the Defendants, Udell Stubbs Trucking Company, Magna Corporation (formerly Mississippi Steel Company) and their agent, James Rucker.
It is obvious from a perusal of the instructions P-9 and P-10 that there is no indication in what manner the defendants were negligent. The jury was left to grope with, and surmise, what the negligence referred to consisted of. Such instructions have been condemned time and time again. Even instructions that tell the jury, if they believe the defendant is guilty of "negligence as charged in the declaration" are not proper and constitute reversible error. Yazoo & M.V.R. Co. v. Cornelius, 131 Miss. 37, 47-48, 95 So. 90, 92 (1923). See also Southland Broadcasting Co. v. Tracy, 210 Miss. 836, 847-849, 50 So.2d 572, 576-577 (1951); Glens Falls Insurance Co. v. Linwood Elevator, 241 Miss. 400, 425, 130 So.2d 262, 271 (1961); and Merchants Co. v. Hutchinson, 186 So.2d 760, 763-764 (Miss. 1966). Also, see Meridian City Lines v. Baker, 206 Miss. 58, 39 So.2d 541 *773 (1949); Rawlings v. Royals, 214 Miss. 335, 58 So.2d 820 (1952); New Orleans & N.E.R. Co. v. Miles, 197 Miss. 846, 20 So.2d 657 (1945); Town of Fulton v. Mize, 274 So.2d 129 (Miss. 1973).
The instructions constitute reversible error and are not cured by any other instruction or by reading all instructions together.
In view of the fact that this case must be reversed and remanded for a new trial, we do not find it necessary to discuss the remaining assigned errors, since they probably will not reoccur on the next trial.
REVERSED AND REMANDED.
WALKER, C.J., HAWKINS, P.J., and DAN M. LEE, PRATHER, ROBERTSON, SULLIVAN and GRIFFIN, JJ., concur.
ANDERSON, J., not participating.