Yazoo & M. V. R. Co. *v.* Cornelius.

[95 South. 90. No. 22924.]

1. RAILROADS. *Question of injury by servant held for the jury.*

   In an action against a railroad company by a trespasser on one of its freight trains for an injury alleged to have been received by him at the hands of one of the company's brakemen on said train, one defense of the railroad company being that the evidence does not tend to show that the injury was received at the hands of the servant of the company, the evidence examined and found to be sufficient to go to the jury on that question.

2. RAILROADS. *Railroad company liable for tort of servant knowingly or ignorantly exceeding authority.*

   A railroad company is liable for the tort of its servant committed within the general scope of the latter's employment, even though the servant in committing the tort exceed his authority; and it is immaterial whether he exceed his authority knowingly or ignorantly.

3. RAILROADS. *Question of scope of employment of servant injuring trespasser on train held for jury.*

   One defense of the railroad company in said action being that the evidence does not tend to show that if the plaintiff was injured by a servant of the company such servant was acting within the scope of his employment, the evidence examined, and found sufficient to go to the jury on that question.

4. TRIAL. *Jury entitled to have law of case set out in full in instructions.*
In an 'action against railroad company for a personal injury, instructions, telling the jury that if they believe from the evidence the plaintiff "was injured in the manner and form charged in the declaration" they should find a verdict for the plaintiff, are erroneous, because the jury are entitled to have the law of the case as given by the court set out in full in the instructions, and should not be required to resort to the pleadings in the case to piece out the court's instructions; such requirement being confusing and misleading to the jury.

5. TRIAL. *Contradictory and misleading instructions erroneous.*
An instruction in such a case, telling the jury in one clause that it is not necessary for the evidence to show that the servant who injured plaintiff was authorized to protect defendant's train against trespassers, and in another clause that if the evidence shows that defendant's servant when he injured plaintiff was "engaged in his duties about the train" they should find for the plaintiff, is erroneous, because those two clauses of the instruction are contradictory and misleading to the jury.

6. RAILROADS. *Instruction on scope of employment of servant injuring trespasser on train held erroneous.*
In such a case an instruction, telling the jury, if the evidence shows that defendant's servant injured plaintiff while such servant was in the performance of "what he thought to be his duty," they should return a verdict for the plaintiff even though the evidence shows that such servant was acting beyond the scope of his duty and against the rules and regulations of the defendant, is erroneous, in that it authorizes a verdict against the defendant even though defendant's servant causing the injury was engaged about duties foreign to the furtherance of defendant's business for which such servant was employed.

APPEAL from circuit court of Coahoma county.
HON. W. A. ALCORN, JR., Judge.

Action by Frank Cornelius against the Yazoo & Mississippi Valley Railroad Company. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

*Chas. N. Burch, H. D. Minor* and *F. H. Montgomery,* for appellant.

A directed verdict should have been granted in favor of the defendant. At the conclusion of the evidence the defendant moved for a peremptory instruction; motion was overruled by the court. We submit that this action of the court was erroneous.

The plaintiff failed to identify either the conductor or the two brakemen. Notwithstanding the plaintiff was in court and saw the conductor and the two brakemen testifying, he did not identify any one of them as the man who did the shooting. Now, the burden was on the plaintiff to show by a preponderance of evidence that he was shot by a member of the train crew, on the other hand, he only showed that he was shot by a man in overalls and that he had seen this man at Lake Cormorant giving signs. These signs may have been intended for other trespassers on the train. Plaintiff absolutely failed to identify the conductor and the two brakemen who were in charge of the train. It necessarily results, therefore that the plaintiff has failed to prove his case and that a directed verdict should have been given in favor of the defendant.

A directed verdict should also have been given on the ground that even if plaintiff had been shot by a member of the train crew, such action on the part of the trainman was beyond the scope of his authority and not in furtherance of the master's business. *American Railway Express Company* v. *Wright,* 91 So. 344; *I. & N. R. R.* v. *Corlander,* 91 So. 699; *Moore Stave Co.* v. *Wills,* 111 Miss. 796, 72 So. 228; *Canton Warehouse Co.* v. *Pool,* 78 Miss. 147, 28 So. 823, 84 Am. St. Rep. 620; *A. & V. Ry. Co.* v. *Harz,* 88 Miss. 681, 42 So. 201; *A. & V. Ry. Co.* v. *McAfee,* 71 Miss. 70, 14 So. 260; *Hines* v. *Cole,* 123 Miss. 264; *Ticherberger* v. *Express Co.,* 73 Miss. 169; *Railroad* v. *McWilliams,* 112 Miss. 244; *Railway Co.* v. *McAfee,* 71 Miss. 73; *Railroad Company* v. *Latham,* 72 Miss. 35; 5 Ruling Case Law, section 745; *Louisville Gas Co.* v. *Kaufman,* 105 Ky. 131, 48 S. W. 439; Thomp. Neg., p. 364; *Hughes* v. *Railroad Co.,* 91 Ky. 526, 16 S. W. 275; *Wintuska's Admr.* v. *Railroad Co.* (Ky.), 20 S. W. 819; Section 103 of Black's Law and

Practice, in Accident Cases; *United States* v. *Ross,* 92 U. S. 281; *Looney* v. *Metropolitan Rd. Co.,* 20 U. S. 480; *Leonard* v. *Miami Min. Co.,* 148 Fed. 827; *Leary* v. *Fitchburg Rd. Co.,* 173 Mass. 373, 43 N. E. 817.

The court erred in granting plaintiff's second, third, fourth, fifth and seventh instructions in that no one of said instructions was complete in and of itself, but referred the jury to the declaration filed in the case. The declaration and the instructions are conflicting. As already stated, the declaration alleges that a servant of the defendant "acting within the scope of his employment, wantonly, maliciously, wilfully and cruelly shot the paintiff."

Instruction No. 4 (Rec. 92) for the plaintiff is: "The court instructs the jury that if they believe from the evidence, that an employee of the company, while in the discharge of his duty, or what he thought to be his duty, shot the plaintiff while he was stealing a ride, as alleged in the declaration, then they must find for the plaintiff even though the jury may believe from the evidence that said employee of the company was acting beyond the scope of his duty and against the rules and regulations of the company."

We again submit, therefore, that the instructions of the plaintiff, referring to the declaration as a basis of liability, were not harmless errors, but most prejudicial.

Indeed, on referring to the instructions for the plaintiff it will be found that reference is made to the declaration for the purpose of piecing out the instructions in every instruction for the plaintiff with the exception of the instruction stating the form of verdict and the instruction advising the jury that nine jurors may return a verdict.

Instruction No. 2 for the plaintiff is erroneous in that it makes the defendant liable for any tort committed by a servant during the hours while he is on duty. Instruction No. 4 is erroneous in that the master is held liable for any tort of the servant if the servant did "what he thought to be his duty." We submit that no case can be found

which will hold the master liable for a total unauthorized act of the servant merely because the servant "thought" the act to be his duty. This would leave the master exposed to every whim or caprice of the servant and would extend the doctrine of *respondeat superior* far beyond the principle of any adjudicated case.

Instruction No. 7 is erroneous in that the master is made liable for the act of any servant in shooting a trespasser off a train, even though such servant may not have been a member of the train crew and may have had nothing whatever to do with the operation of the train. The instructions granted plaintiff and defendant are hopelessly conflicting. *L., N. O. & T.* v. *Phillips,* 12 So. (Miss.) 825; *Mahaffey* v. *Russell,* 100 Miss., 122; *McNeil* v. *Bay Springs Bank,* 110 Miss. 271; *Solomon* v. *Compress Co.,* 69 Miss. 319; *Hines* v. *McCullers,* 121 Miss. 677.

On the whole case it is respectfully submitted that the case should be reversed and dismissed, or in any event, reversed and remanded for a new trial on correct instructions.

*Maynord, Fitzgerald & Venable,* for appellee.

The jury having found that the man who did the shooting was the brakeman of the company, the question then arises as to what are the scope of the duties of brakeman. It was testified to by the conductor and two brakemen, who were on the fateful train, that the brakeman had no right to eject a trespasser, except by order of the conductor, and that the conductor in this case had not given any such order.

Now, in the case at bar the question arises as to whether or not an employee or agent of the company, whose line of duty requires him to see that the train is free of trespassers, and even at the injunction of the conductor to eject trespassers, and whose instructions, of course, and employment, require that he not injure persons in ejecting them, nevertheless exceeds his instructions and authority and

wilfully shoots a trespasser off the train in such an event, is the company liable for his tortious act? We refer the court to 6 Labatt's Master & Servant (2 Ed.), page —, sec. 2224: "The general rule is that the master is answerable for every such wrong of the servant or agent as is committed in the course of the service and for the master's benefit though no express command or privity of the master be proved."

"A master is liable for the tortious acts of his servant done in the course of his employment and within the general scope of his authority."

"The   .   .   .   well-settled rule of this court whatever may be the rule in other jurisdictions, (is) that a master is responsible for the torts of his servant, done in the course of his employment, with a view to the furtherance of his master's business, and not for a purpose personal to himself, whether the same be done negligently or wilfully, but within the scope of his agency, or in excess of his authority, or contrary to the express instructions of the master."

Counsel for the appellant seems to lay a good deal of stress on the proposition that as the brakemen are not authorized to eject trespassers, except, under certain conditions; that if they do eject them, and thereby injure them, they are thereby acting beyond the scope of their duties. The expression, "beyond the scope of their duty" is a very loose expression. In instances where it is held that a master is not liable for the acts of his servant in wilfully injuring a third person, we believe it will be universally found that the servant is not acting simply beyond the scope of his duties, but in acting at the time when he is not engaged in his master's business. The case of *Richberger* v. *Express Company,* 73 Miss. 169, settles the law of master and servant as to the liability of the master for the servant's injuries beyond any sort of question in this state. That was a case where Richberger had asked for a refund for an overcharge from the Express Company, and the local agent after paying him the refund, taking his receipt, and finishing the business, cursed and abused and maltreated him,

on his own personal account.  Surely it could not, in any sense of the view held in that case, be said that it was a part of the express agent's duty to whip Mr. Richberger, or that that was a case of acting beyond the scope of his duties.  He was actually acting outside and contrary to his duties in that case, but while he was so acting he was in the employ of the company.  Justice WHITFIELD, who delivered the opinion of the court in that case, quotes from Judge ANDREWS' decision in *Rounds* v. *Delaware, etc., R. R. Company,* 64 N. Y. 136.  We also respectfully call the court's attention to the following Mississippi cases, which are in line with the Richberger case: *Indianola Cotton Oil Co.* v. *Crowley,* 121 Miss. 262.

The court will notice that the *Hinds* v. *Cole case,* 123 Miss. 254, is not in point, for the reason that that case went off on the proposition as to the negligence of the railroad company in employing Cannon, a fellow servant of the injured employee, under the allegation that Cannon was known to be a man of infirm temper and violent nature. See General Rule stated in 5 Ruling Case Law, section 745.

It has already been shown, at least to the satisfaction of the jury in the court below, that the brakeman under certain conditions had the right to eject trespassers, and certainly this was not beyond the scope of their duty under those conditions.  We have no doubt that trespassers from time to time do give the railroad brakemen, and others, a good deal of trouble, and that there is a very high degree of antipathy existent between the railroad men and trespassers, and that in some cases just as in this, the brakemen vent their spleen on the helpless trespassers, because of the trouble they gave them in having to clear the train. Unfortunately, however, in this case the man shot was an innocent country negro, who simply hung on to the side of the freight train because there was no passenger train down for several hours. ˉ

The supreme court of the state of Mississippi does not agree with the statement of the law as set forth above in Ruling Case Law, because if a strict construction were

to be placed on that statement, then the case of *Rich-berger* v. *Express Company,* would never have been decided in the way it was.

We submit that the appellee in this case has shown by a preponderance of evidence, first: That he was shot by an employee of the defendant; second: That such employee was acting within the scope of his authority, and that is all that is necessary.

With regard to the instructions, the instructions in this case were full and complete. It is true that the appellant railroad company had more granted to it than it was entitled to, but the instructions as a whole are correct. The best answer to the criticisms is the case of *Illinois Central Railroad Company* v. *Brown,* 39 So. 530, decided December 18, 1905.

ANDERSON, J., delivered the opinion of the court.

The appellee, Frank Cornelius, recovered a judgment in the circuit court of Coahoma county against appellant, Yazoo & Mississippi Valley Railroad Company, for damages for a personal injury suffered by him through the alleged wrong of one of appellant's brakemen in shooting appellee while the latter was stealing a ride on one of appellant's freight trains, from which judgment appellant prosecutes this appeal.

The errors assigned and argued, which are deemed of sufficient seriousness to notice, are that the court should have granted appellant's request for a directed verdict, and, if mistaken in that contention, that the court erred in granting each and all of the instructions given for appellee (seven in number) except two, one on the form of the verdict and the other, the nine jury verdict charge. Appellant's request for a peremptory instruction was based on two grounds: First, that the evidence failed to show that appellee was injured by a servant of appellant; and, second, that if that fact was sufficiently shown, still there was no liability, because the evidence showed that the ser-

vant causing the injury was not engaged at the time about the appellant's business.

In passing on the propriety of a directed verdict for appellant, every fact proven, or which the evidence fairly tends to prove, favorable to appellee's case, must be treated as established. So viewing the evidence, we have this case for the appellee: Appellant's road on which appellee was traveling when injured runs from Memphis in Tennessee in a southerly direction through the western part of the state. On April 19, 1921, appellee walked from Memphis to Lake Cormorant, a station on appellant's road, on his way to Lost Lake, another station on said road, both of which are in this state, the latter being south of the former some miles. While at Lake Cormorant appellee, without the knowledge or consent of the train crew in charge, hung onto the ladder attached to a box car on the east side of and about midway of appellant's through freight train No. 975 going south. Some miles south of Lake Cormorant, while appellee was thus situated and while said train was going at a speed of something like thirty-five miles an hour, some person having the appearance of a brakeman left the caboose in the rear and came over the top of the train, making his way toward the engine. When this person passed appellee he asked appellee where he was going, to which appellee replied that he was going down the road. This person then proceeded on his way toward the engine. In a short while another person, also having the appearance of a brakeman, came from the direction of the caboose, and was approaching the front of the train. When he got near to where appellee was, the person who had preceded him and asked appellee where he was going looked toward this one; and pointed down on the side of the train where appellee was stationed, whereupon this second person leaving the caboose pulled his pistol and said (using the language of the plaintiff):

" 'Get off here, you nigger, you —— [calling him a vile name],' and then shot me and that is all I heard him say."

Appellee took these two men to be brakemen on this train because as he testified they had the appearance of

brakeman, and furthermore at Lake Cormorant, while this train was standing there, he saw both of these men giving the engineer signals for the movement of this train. The train crew testified that none of them saw the appellee, that they did not know he was on the train at the time he was shot, in fact never heard of it until afterwards down the road some distance; and one or more of the train crew testified that at the time appellee claimed to have been shot there were probably as many as eight trespassers on this train.

Appellee's evidence tended to show further that, although brakemen on freight trains on appellant's roads had no right to remove trespassers from moving trains, the conductors alone had control of the trains; that still under the direction of the conductors it was the duty of brakemen to remove trespassers while the trains were not moving; and that without any directions it was considered the duty of brakemen to protect their train from trespassers. We think under this testimony it was a question for the jury as to whether the appellee was shot by a servant of appellant.

In considering appellant's second proposition, that there was not sufficient evidence to go to the jury on the question whether at the time appellee was shot by appellant's servant the latter was engaged about appellant's business for which he was employed, the governing principle of law should be clearly in mind. It is the law as contended by appellee that the master is liable for the tort of his servant committed within the general scope of the latter's employment, even though the servant in committing the tort exceed his authority, and it is immaterial whether he exceed his authority knowingly or ignorantly. The crux of the question is whether the servant commits the tort in furtherance of the master's business about which the servant is employed. If he does, the master is liable for the tort whether the servant commits the wrong knowingly or ignorantly. This principle is supported by *Richberger* v. *Express Co.*, 73 Miss. 169, 18 So. 922, 31 L. R. A. 390, 55 Am.

St. Rep. 522, where the question was fully gone into and discussed by the court.  Applying this principle to the facts: Appellant's two brakemen appeared to be on the hunt for trespassers, one of whom found appellee and pointed him out to the other, who shot him; the one who did the shooting ordered appellee to get off before shooting. There was evidence to the effect that it was the duty of brakemen to protect their trains against trespassers, although they were without authority to eject trespassers from moving trains.  We are of opinion that this was sufficient to make it a question for the jury whether appellant's brakeman shot appellee in furtherance of appellant's business about which said brakeman was employed, or in furtherance exclusively of his own purposes.  This case is distinguishable from the *I. C. R. Co.* v. *Green,* 94 So. 793, recently decided by this court.  In the latter case the fireman, whose sole duties were shown to be confined about the engine, who had nothing whatever to do with protecting his train against trespassers, went forward on the train several car lengths, and, without saying anything to the plaintiff, who was a trespasser, or making any effort whatever to get him off of the train, shot him.  This court held the defendant not liable because the fireman was not engaged in furtherance of his master's business about which he was employed, but in furtherance of his own purposes and ends.

In five instructions for the appellee the court told the jury in substance that, if the evidence showed the appellee was injured in the manner charged in the declaration, they should return a verdict in his favor.  This was error, as held by this court in *So. Ry. Co.* v. *Ganong,* 99 Miss. 540, 55 So. 355.  The court stated the reasons for so holding in the following language:

"The jury was entitled to have the law of the case, as given by the court, written out in full in the instructions. To require the jury to resort to the pleadings in the case, to patch up and piece out the instructions, is calculated to confuse and mislead them.  In many cases the pleadings set out the cause of action and the defense thereto with

such prolixity that it would be exceedingly difficult for the jury, by reference to them, to extract therefrom the allegations sought to be incorporated in the instructions; in fact, cases arise where one learned in the law would have much difficulty in so doing. It is manifest that in such cases instructions so drawn would be most prejudicial to the rights of the opposite party."

In one clause of instruction 2 for the appellee the court told the jury in substance that it was not necessary for the evidence to show that the brakeman who shot appellee was authorized to protect appellant's train against trespassers; and in another clause they were told that, if he shot appellee while he, the brakeman, was "engaged in his duties about the train," they should find for the appellee. These two clauses are contradictory and were misleading to the jury; for, if it was no part of the duty of the brakeman to protect the train against trespassers, he could not have been engaged about his duties when he shot appellee. As stated above, the law is that to hold the master liable for the tort of his servant the servant must be acting in furtherance of the master's business about which he is employed; and certainly a brakeman is not so acting in shooting a trespasser on his train if under no circumstances he is authorized to eject such trespasser or otherwise deal with him.

By instruction 4 for the appellee the court told the jury that, if the evidence showed appellant's servant shot appellee while such servant was in the performance of "what he thought to be his duty," they should return a verdict for appellee, even though the evidence further showed that said servant was acting beyond the scope of his duty and against the rules and regulations of appellant. If this instruction embodies a correct principle of law, then a railroad company would be liable for the tort of any of its officers or employees, from the highest to the lowest, who might shoot a trespasser off of one of its trains, regardless of whether such officer or employee was engaged about the duties for which he was employed or not, provided he *thought* he was engaged about such duties. That is not

the law. We know of no authority going that far. Such a rule would make the master liable for every wild caprice of his servant resulting in wrongful injury to another.

These erroneous instructions for appellee were not cured by the instructions given for appellant, for in some of their essentials they are so conflicting as to be irreconcilable; they gave the jury no definite and certain rule to be governed by.

*Reversed and remanded.*