GURLEY *et al. v.* TUCKER *et al.*

(Division B. May 28, 1934.)

[155 So. 189. No. 31188.]

**Lester G. Fant, Sr.** and **Jr.,** of Holly Springs, for appellant.

**Fred B. Smith**, of Ripley, for appellees.

Smith & Smith, of Holly Springs, for appellees.

Argued orally by **Lester G. Fant, Sr.,** and **Lester G. Fant, Jr.,** for appellant, and by **L. A. Smith, Jr.,** for appellees.

**Griffith, J.,** delivered the opinion of the court.

Seven young men of the immediate community had gone to an abandoned house some time after nightfall

during Christmas week for the purpose of engaging in a game of dice. A negro had accompanied them to keep up a fire. In about an hour four deputy sheriffs crashed into the room, and presenting their arms demanded in a menacing manner that all present put up their hands, which being done a search of their persons was conducted. In the course of events thereafter shortly ensuing, two of the young men, brothers named Gurley, were killed by the deputies, and it is for the death of one of them, Lloyd Gurley, that this action was instituted for the recovery of damages.

On the trial the jury returned a verdict for the defendants, and on this appeal, the first contention of plaintiffs is that they should have had a peremptory instruction, and if not, then the verdict should have been set aside as against the overwhelming weight of the evidence. Twelve eyewitnesses to the homicide testified, and there is not only contradiction among most of them, but in some respects these contradictions amount almost to confusion. Looking at the printed pages of the record— and in which we are, of course, at a disadvantage as compared with the jury who saw these witnesses and could note many items of a more or less convincing nature which cannot be reflected by a written transcript—we are much impressed that the killing of Lloyd Gurley was unnecessary both in reality and as a matter of reasonable appearances at the time. This is not a case where officers were engaged in the arrest of desperate and dangerous criminals of a vicious type wherein the officers must be allowed largely to pursue their own methods, but is a case merely of neighborhood youths, none of whom were more than casual misdemeanants. And we are impressed, too, that the main thread of the story as related by the plaintiffs' witnesses comes nearer into harmony with the undisputed physical facts than does the version maintained by the witnesses for the defendants.

As an instance of the above, we may refer to the fact that the undisputed evidence establishes that Lloyd Gur-

ley had a severe scalp wound. Plaintiffs' witnesses say that this was caused by Deputy Tucker, who, they say, struck Lloyd Gurley on the head with a pistol. Defendants' witnesses deny this, but make no sort of suggestion, reasonable or otherwise, as to who else than Tucker did it or could have done it; nevertheless the wound was there. As we see it, from this record, the fact just mentioned, and its relation to that particular part of the series of occurrences which is of a vital nature in the correct determination of the controlling issue, is of great probative importance; and there were at least two other extremely significant items of undisputed physical facts which it seems to us can better be harmonized with the version as given by plaintiffs' witnesses. However, after a prolonged consideration of this record we have concluded that the evidence, all taken together, is of such a nature that a peremptory instruction would not have been proper; and since the case is to be remanded for a new trial, for reasons now to be stated, it is unnecessary to consider whether the motion for a new trial should have been sustained on the assigned ground that the verdict was against the weight of the evidence.

We have stated so much of the case as above in order to disclose the necessity that no material error of law should be permitted in the instructions. It was the theory of the defense that the two Gurley brothers had made a deadly and concerted attack upon Deputy Tucker, and that Lloyd Gurley was holding on to Tucker, seeking to pinion his arms, while Glenn Gurley was endeavoring to shoot Tucker with a pistol over which Glenn Gurley and Tucker were struggling, and that in this dangerous and precarious situation, Deputy Overton shot and killed Lloyd Gurley in order to save Tucker from death or great bodily harm. Lloyd Gurley was entirely unarmed, as the deputies knew or reasonably ought to have known; and the story of plaintiffs' witnesses was that Lloyd Gurley did not have hold of Deputy Tucker, had not had hold of him, had made no attack upon Tucker, and that as a

matter of fact Tucker was beating Lloyd Gurley over
the head with a pistol, or had knocked him away with a
blow on the head with a pistol, when Lloyd Gurley was
shot by Overton; and that neither Tucker nor Overton
nor any other person was in danger on account of any-
thing being done by Lloyd Gurley at the time he was
shot. The jury could well have believed, under all the
evidence, that at the time Lloyd Gurley was shot Glenn
Gurley was engaged in an attack on Tucker, but that
Lloyd Gurley was not then, and had not been, so en-
gaged.

In this situation, the court gave, at the request of de-
fendants, not one but three instructions which told the
jury that if either of the Gurleys were engaged in a
murderous attack upon the officers, or if the officers were
in danger at the hands of either of the Gurleys, or if
there were any overt murderous act towards the officers
by either of the Gurleys, then the officers were justified in
killing either or both of them. This is not the law as
applied to the situation being adjudicated, and appellees
so admit. They contend that the three instructions com-
plained of are not fairly subject to the stated construc-
tion; but upon a repeated reading of them we are unable
to see how the construction mentioned can be reasonably
avoided.

And instruction No. 11 is also erroneous, and in this:
The testimony for the defendants is that while Glenn
Gurley was seeking to shoot Tucker, his brother Lloyd
Gurley called on him to kill Tucker. This was disputed
by plaintiffs' witnesses. The said instruction told the
jury, as was the ultimate effect of the language therein
used, and as may have been understood by the jury, that
this command by Lloyd Gurley to his brother to kill
could be viewed as the equivalent of an overt, continu-
ous, physical act of concerted attack by Lloyd Gurley as
well as by Glenn Gurley; but if the jury may not have so
understood the instruction, there is to be said of it, at
least, that it is so drawn that the alleged declaration or

command by Lloyd Gurley is in effect singled out, or particularized, in such a manner as to advance it into undue prominence as a part of the related facts, 64 Corpus Juris, 682-690, and that it amounts to a charge upon the effect of a certain piece of evidence in matter of relative weight or in probative value, when this belongs here to the jury. If Glenn Gurley had unjustifiably killed the deputy, and Lloyd Gurley were being prosecuted therefor under a joint indictment with Glenn Gurley, the calling upon his brother by Lloyd Gurley to kill would have been sufficient, if proved, to convict Lloyd Gurley; but it does not follow that Lloyd Gurley could have been justifiably killed simply because of that declaration or command. If so, then an unarmed person who, one hundred feet away, calls to another to kill, may himself be killed under the plea of self-defense, and this of course is not the law. Necessity, or the reasonable belief of necessity, is the test which is to be applied in that state of case, and mere words can hardly be conceived of as creating any such necessity as to the person using the words.

The following instruction was granted at the request of defendants: ''The court instructs the jury for the defendants that unless you believe from a preponderance of all the evidence in this case that the plaintiffs have established their case in the manner and form as charged in the declaration, then it is the sworn duty of the jury to return into court the following verdict: We the jury find for the defendants.'' This instruction has been repeatedly condemned by this court. We need not repeat what was said of it in Yazoo & M. V. R. R. Co. v. Cornelius, 131 Miss. 37, 47, 95 So. 90; but add only that the declaration in this case contained many averments, and at length, by way of recital and inducement, several of which were not proved or attempted to be proved, and yet the jury in seeking to obey this instruction may have thought them material. The only way to avoid harmful error in the giving of this instruction in a case such as we

have here before us is to assume that the jury knew better and didn't follow the instruction, and every substantially erroneous instruction could be held harmless on the same assumption. We would not reverse for the latter instruction alone, and this because of the fourth instruction obtained by plaintiffs, but reference is made to the matter that the error may be avoided in any subsequent trial.

We believe the above will sufficiently indicate a proper course to be taken with the instructions on a new trial. Because of the extreme improbability that any change had taken place, we think it would have been better to receive the evidence as to the signs on the joist of broken glass; and because of the extreme improbability that the liquor fines had anything to do with the final conduct of the officers, that testimony was properly rejected.

Reversed and remanded.