SOUTHLAND BROADCASTING Co., et al. *v.* TRACY.

Division B. Feb, 12, 1951.

No. 37735 (50 So. (2d) 572)

Deavours & Hilbun, for appellants.

838

Melvin & Melvin, for appellee.

840

**Hall, J.**

Appellee brought suit against appellants for the recovery of damages for personal injuries sustained by him in an automobile wreck. His declaration was in two counts. The first count charged that the relation of master and servant existed between the broadcasting company and Leggett, that at the time of the wreck the automobile was being operated by Leggett in the scope of his employment and in furtherance of the business of the company, and that the wreck was caused by the negligence of Leggett in operating the automobile at

such a highly dangerous and excessive rate of speed that he was unable to control it. The second count contains substantially the same allegations as the first count and in addition thereto charges that Leggett on and prior to the date of the wreck was an habitual drunkard and would frequently drive the automobile while in an intoxicated condition, that he was a reckless and dangerous driver, that the company knew or should have known the same but nevertheless placed the automobile in his control with the privilege of operating it at his pleasure and of using his own discretion in its operation and control. In its answer the broadcasting company denied in detail the several acts of negligence alleged against it, denied that Leggett was an habitual drunkard or reckless driver, denied that it had any knowledge thereof, and then as a special defense alleged that on the occasion of the wrck the plaintiff and Leggett were both intoxicated, that the plaintiff voluntarily and knowingly rode in the automobile with Leggett at a time when he was intoxicated and thereby assumed all risk incident to the ride.

Nearly a month and a half after the filing of this answer in which it was specifically charged that Leggett was drunk at the time of the wreck, and just before the trial of the case, the company moved to strike from the declaration the allegations as to Leggett's drinking habits. The overruling of this motion and the admission of evidence to support this charge is assigned as error. The company had not only denied the charge and had made an issue on this point long before the filing of the motion but it had also affirmatively pleaded that Leggett was drunk on the occasion in question. Thereby it sought the benefit of Leggett's one occasion of alleged drunkenness and at the same time sought to cut off the plaintiff from proving that Leggett was an habitual drunkard. The plaintiff was clearly entitled to proceed upon the case charged by him in either or both counts of his declaration and in the light of the evidence offered at the trial we

are of the opinion that the action of the trial judge was correct. In the case of McDowell v. Minor, 158 Miss. 788, 792, 131 So. 278, 279, this Court said: "We notice that in some districts both in law and in chancery there is an occasional occurrence of this erroneous practice of attempting to substitute a motion to strike for the more appropriate method of a plenary pleading, whereas from the earliest times consistently down to this day that unauthorized procedure has been disapproved and discouraged in this jurisdiction. It is true that where a pleading has been filed out of time without just excuse, or where a pleading is so manifestly sham and frivolous as to be in substance no pleading at all, or where clearly the pleading thus attacked can have no legitimate place in the proceedings under any possible view that may be taken of the case, the motion to strike is available. But in the absence of statute, a motion is not a pleading and 'ought not to be permitted to usurp the place of regular formal pleading where they are appropriate.' The rule in this state is that the stringent remedy of striking finally from the files will be allowed only when there is no other available method by plenary pleading and when the justice of the motion to strike is so clear as to be fairly indisputable. To state the rule in other words, it may be summarized in the language taken from page 671 in 19 Ruling Case Law: ██ █ 'Motions are generally appropriate only in the absence of remedies by regular pleadings and cannot be made available to settle important questions or to dispose of the merits of the case.' See, also, Gridley v. Duncan, 8 Smedes & M. (16 Miss.) 456, 458, 459; Marshal v. Hamilton, 41 Miss. 229, 235; Tully v. Herrin, 44 Miss. 626, 629; McClave-Brooks Co. v. Oil Works, 113 Miss. 500, 509, 74 So. 332; Kehlor Flour Mills Co. v. Reeves Gro. Co., 113 Miss. 30, 35, 73 So. 866; Griffith Miss. Chan. Pr. Secs. 274, 367, 400, 402."

Error is also assigned and argued in the action of the trial court in refusing requests of both defendants for directed verdicts in their favor for two reasons: (1) Be-

cause it is claimed that plaintiff rode in the automobile with Leggett at a time when he knew or should have known that Leggett was in an intoxicated condition and as a result of which he assumed the risk of such a venture and is precluded from recovering, and (2) because the verdict was against the overwhelming weight of the evidence in that it was conclusively shown not only that Leggett was drunk but also that Tracy and not Leggett was driving the car at the time of the wreck. These contentions necessitate a review of some of the evidence disclosed by the voluminous record before us.

Southland Broadcasting Company is a corporation and owns and operates radio station WLAU at Laurel, Mississippi. C. Hubert Leggett owns one-half of the corporate stock and is president and commercial manager of the corporation. His principal duty is to go out and solicit advertising for the station. The other stockholder is secretary of the corporation who owns one-half of the stock. The corporation purchased two automobiles and delivered one to each stockholder. The car used by Leggett was a Chrysler; he kept it twenty-four hours of each day and controlled it at all times, using it for both business and pleasure in any manner that he saw fit, and the company consented to such use. Tracy was employed by the company as a radio announcer and had been so employed only about three weeks at the time of the accident. On the night in question Tracy "signed off" at 11 p. m. and closed the station a few minutes afterward and went to a nearby restaurant known as the Snack Shop to get a hamburger and coffee. At that place he met Leggett. Up to this point the facts are undisputed, but as to all events occurring thereafter there is a sharp dispute in the evidence. Leggett claims, with some corroboration, that he was so thoroughly drunk that he did not know what he was doing. Tracy claims, also with corroboration, that Leggett's actions and appearance were such that he had no cause to suspect and did not

suspect that Leggett was under the influence of intoxicants. There was also testimony sufficient to justify the jury in finding that Leggett was a chronic alcoholic and an habitual drunkard, but that this fact was unknown to Tracy who had been associated with Leggett but very little during the brief period of his employment.

Tracy and Leggett left the Snack Shop together and rode in the company's automobile to a night club known as John's Place about three or four miles south of Laurel. Tracy claims that he went at the request of Leggett who desired to see the operator about a contract for broadcasting advertising; Leggett denies this and claims that the trip was made at the request of Tracy. As an adverse witness called for cross-examination at the beginning of the trial, Leggett testified that he was so intoxicated when they left John's Place that he didn't know what he was doing, that he looked up and saw that they were headed down the highway with Tracy driving, that he thinks he went to sleep, that he doesn't know what happened after they left John's Place and doesn't remember anything until the next day; later in the trial, after plaintiff had rested his case, Leggett testified positively that when they left John's Place they went south towards Hattiesburg, with Tracy driving, that they did not drive back to Laurel; that he told Tracy he was sleepy and dozed off, that he knew what was going on but was too drunk to drive, that he remembers when the car left the road and remembers that he instinctively "flopped over" to protect himself. Tracy testified that when they left John's Place they drove back to Laurel, that in Laurel Leggett took over the driving, went to the broadcasting studio, came out and resumed driving and said that he had to make a trip to Dutch's Place, another night club, to see the owner about a broadcasting contract; that he, Tracy, protested and told Leggett that he had to open the station shortly after 5 a. m. and needed some sleep and requested that Leggett let him go home,

but that Leggett told him to get on the back seat and sleep; that he got on the back seat and Leggett drove south over the same route they had previously traveled and Tracy fell asleep; that up to this time Leggett had been driving in a prudent manner; that he was awakened by the bouncing of the car and looked out and saw that they were passing the Ellisville State School, which is several miles south of John's Place, but north of Dutch's Place; that Leggett was driving so fast he got worried; that Leggett was on the wrong side of the highway and the speedometer needle was down on the right side; that he asked Leggett to slow down and requested that he be let out of the car, but that Leggett refused to slow down and prodded him about being a ''yellow'' announcer. Shortly afterward the automobile failed to make a turn with the highway and gradually left the paved portion of the highway, finally turned over several times, and eventually came to rest approximately 720 feet from the point where it left the pavement. There was testimony that the car was running 80 or 85 miles per hour. Leggett claims that Tracy was driving at this time, and Tracy claims that Leggett was driving. Passing motorists came to the rescue and found Leggett pinned underneath the steering wheel of the car; shortly after releasing him he was able to get up and walk and did walk with them back up the highway looking for Tracy whose body was found a considerable distance north of the wreck. A truck driver who had stopped at the scene of the accident testified that Leggett had been drinking but didn't seem to be drunk and ''walked just like we did, . . . his condition was all right, so far as I could tell.''

In view of these various conflicting claims and contentions of the parties this was a typical case for decision by a jury, composed of men from all walks of life, who are in a better position than is a single judge to solve such conflicts. Johnston v. Canton Flying Services, Inc.,

Miss., 46 So. (2d) 533, 537, not yet reported in the State Reports, and the authorities therein cited. The requests for directed verdicts were therefore properly refused.

It is further contended by appellants that the trial court erred in granting an instruction to appellee which authorized an award of exemplary or punitive damages. "Punitive damages may be recovered, not only for a willful and intentional wrong, but for such gross and reckless negligence as is equivalent to such a wrong, since an act done in spirit of wantonness and recklessness is oftentimes just as harmful as if prompted by malice." Hadad v. Lockeby, 176 Miss. 660, 670, 169 So. 691, 693, and numerous authorities therein cited. See also Teche Lines, Inc. v. Pope, 175 Miss. 393, 166 So. 539, and authorities therein cited, wherein it was held that punitive damages are recoverable not only for willful and intentional wrong, but also for gross and reckless negligence. Under the facts in this case we are of the opinion that the jury would have been authorized to find that Leggett's negligence was so wanton and reckless as to justify the infliction of punitive damages. Moreover, we cannot say with any degree of confidence that the verdict in this case included any award of punitive damages.

Appellants also criticize as erroneous three other instructions granted to appellee, and, while one or two of them may not have been technically correct, we do not believe they are so erroneous as to justify a reversal of the case. We base this conclusion in part upon the fact that at the request of the parties the trial court granted twenty-seven different instructions to the jury and we do not think that the jury was misled as to the applicable law when the over-all picture presented by these instructions is considered. One of the instructions granted to appellants reads "The court instructs the jury for the defendants that the burden of proof in this case is upon the plaintiff to prove each and every material allegation

contained in his declaration by a preponderance of the evidence, and unless the plaintiff has proved each and every material allegation of the declaration by a preponderance of the evidence, it is your sworn duty to find for the defendants.'' The granting of such an instruction at the request of defendants has become quite common in the courts of this state, notwithstanding the fact that such practice has been repeatedly condemned. It is not proper for an instruction to refer the jury to the pleadings without setting forth some applicable principle of law; the law of the case should be set out in the instructions and the jury should not be invited to resort to the pleadings to piece out the instructions and determine what the law is; ██ the applicable law and facts of the case should be simply stated without referring the jury to the declaration to decipher facts or law from it. This instruction is unintelligible and obscure because, without any formula to guide them, the jury are referred to the declaration to determine what allegations of the declaration are material. A very similar instruction was granted in Gurley v. Tucker, 170 Miss. 565, 155 So. 189, and was condemned by this Court. In Southern Railway Company v. Ganong, 99 Miss. 540, 55 So. 355, this Court said: ''The jury was entitled to have the law of the case, as given by the court, written out in full in the instructions. To require the jury to resort to the pleadings in the case, to patch up and piece out the instructions, is calculated to confuse and mislead them. In many cases the pleadings set out the cause of action and the defense thereto with such prolixity that it would be exceedingly difficult for the jury, by reference to them, to extract therefrom the allegations sought to be incorporated in the instructions; in fact, cases arise where one learned in the law would have much difficulty in so doing. It is manifest that in such cases instructions so drawn would be most prejudicial to the rights of the opposite party.'' See also Yazoo & M. V. R. R. Co. v. Cornelius, 131 Miss. 37, 95 So. 90; Lanham v. Wright, 164 Miss. 1,

142 So. 5; Teche Lines v. Kellar, 174 Miss. 527, 165 So. 303; Rowlands v. Morphis, 158 Miss. 662, 130 So. 906; McDonough Motor Express, Inc. v. Spiers, 180 Miss. 78, 176 So. 723, 177 So. 655; Meridian City Lines v. Baker, 206 Miss. 58, 39 So. (2d) 541, 8 A. L. R. 2d 854, and authorities therein cited; Jessup v. Reynolds, 208 Miss. 50, 43 So. (2d) 753. Since by appellants' quoted instruction the whole declaration was thrown into the lap of the jury and they were told that plaintiff must prove by a preponderance of the evidence each and every material allegation thereof and that unless he has done so it is their sworn duty to find for the defendants, we conclude that the appellants have suffered no prejudice by the technical inaccuracy in the plaintiff's instructions complained of.

The trial of this case was concluded at a late hour on a Saturday night and the jury retired to consider of their verdict. By agreement of all the parties, as to which no point is made, the trial judge went home and left the circuit clerk to receive the verdict in the event the jury should desire to report. Later the jury came into the courtroom and one of the jurors read to the clerk a verdict whereby the jury found for the plaintiff and assessed his damages at the sum of $20,000 as against the broadcasting company and in the sum of $5,000 as against the defendant Leggett. This verdict was not handed to or received by the clerk. Objection was immediately made as to the form of the verdict, and the same juror who had read the double verdict promptly replied that the jury had prepared another verdict which he forthwith produced and read to the clerk finding for the plaintiff and assessing his damages at the sum of $25,000 against both defendants; that verdict was handed to the clerk as the verdict of the jury and the clerk inquired of the jury if that was their verdict and they all nodded their assent thereto. Judgment was entered thereon in the sum of $25,000 against both defendants. Appellants contend that this was not the verdict of the jury and that consequently the judgment should be reversed and the

cause remanded for another trial. It is the settled law of this state that █ there can be no apportionment of damages against joint tortfeasors; consequently the clerk was without authority to receive the first verdict even if it had been tendered to him; however, it was not tendered, but was merely read, and, in anticipation that such a verdict might not be proper, the jury had already agreed upon and prepared the proper verdict which was delivered to the clerk and assented to by each juror. We find no irregularity in what was done in this case. It was not even necessary to send the jury back to their room for further deliberation or for preparation of a proper verdict as was done in Mississippi Central Railroad Company v. Roberts, 173 Miss. 487, 160 So. 604, and Meridian City Lines v. Baker, supra.

It is contended finally that the verdict is so grossly excessive as to evince passion and prejudice on the part of the jury, for which reason the judgment should be reversed and a new trial awarded. Appellants' motion for a new trial does not question the amount of the verdict, and, since it does not raise this specific point, we would be justified in ignoring it, but, since the motion does aver that the verdict is contrary to the overwhelming weight of the evidence, we have determined, without setting a precedent for the future, to consider the assignment. Plaintiff was 30 years of age at the time of his injury. He is married and has four children; the oldest is eight years of age and the youngest are twins born soon after the wreck. He was injured April 21, 1949, and was completely unconscious for two days and continued unconscious the greater portion of the time until May 7. He suffered a basal fracture of the skull with damage to the brain tissue to the extent that his physician was of the opinion that epilepsy would probably result in future years. The third vertebra in his neck was both fractured and dislocated; as a result he was forced to use a traction cap when lying down, which is a kind of harness that fits under the chin and about the face and runs thence

through a pulley at the head of the bed and to the end of which a weight is attached so as to produce a constant pull on the neck; when out of the bed he has to wear a different kind of brace which holds the weight of the head off the injured vertebra. Three ribs were fractured and punctured his lungs. His jaw was broken in two places; one fracture extended to the canal about the roots of a tooth as a result of which one or more teeth will probably die and have to be extracted. His eyes were injured and his hearing impaired. He has constant headaches and suffers with his leg to the extent that he is forced to use a cane in walking. He was caused to suffer excruciating pain and two surgeons testified that he is permanently injured. Up to the time of trial his hospital and medical bills amounted to approximately $900, which does not include the services of one surgeon who has not yet rendered him a bill. He was earning $55 per week at the time of the injury. ▆▆ In view of the seriousness and extent of these multiple injuries, none of which are denied, and even in the absence of an instruction on punitive damages, we are unable to say that the verdict is so grossly excessive as to manifest bias, prejudice or corruption on the part of the jury. The judgment is accordingly affirmed.

Affirmed.