**UNITED STATES of America, Plaintiff,**

v.

**Warren Arthur SIMS, Roger John Ugaro, Ervin Roland Hayes Ghee, Harry Goody, Jr. (a/k/a "Shorty"), James C. Ross (a/k/a "22" and "James 22X"), Bertha Jean Watts, Andrew Chappell, Jr., James Donald Davis, Frances E. Davis, John Kent Smith, and Rosemary Spoone, Defendants.**

**Crim. No. 26448.**

United States District Court D. Maryland.

April 14, 1964.

252

Thomas J. Kenney, U. S. Atty., Robert J. Carson, Asst. U. S. Atty., Baltimore, Md., for plaintiff.

Francis X. Gallagher, Baltimore, Md., for Harry Goody, Jr.

WINTER, District Judge.

One of the defendants in the above case, Harry Goody, Jr., has moved to suppress his written confession, given to special agents of the Federal Bureau of Investigation. Mr. Goody alleged, and testified before the Court, that he was an heroin addict. Mr. Goody asserted that the confession was procured as a result of improper and illegal inducements made to him by representatives of the FBI. He claimed that he was impliedly promised that if he would confess to the crime he would be given heroin, and that this promise induced his confession because he knew that by confessing and obtaining heroin he would postpone withdrawal symptoms. At the hearing, he also testified that after confessing he was given heroin. As a second ground for suppressing his confession, defendant asserted that he was illegally arrested, and that the illegality of his arrest so tainted his confession that it should be suppressed, citing Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

If defendant's second contention is well-founded, his first contention becomes moot; hence, it is appropriate to consider, first, the claim that defendant was illegally arrested and that, therefore, under Wong Sun, supra, his confession should be suppressed.

Defendant and ten others have been indicted for conspiracy to commit armed robbery of the Citizens Bank of Maryland, Eastover Branch, Oxon Hill, Maryland, and various degrees of the substantive crime of the bank robbery which occurred on July 8, 1963. A warrant for

defendant's arrest was issued shortly thereafter. Most of the other defendants were apprehended before this defendant. This defendant was almost apprehended on two occasions. As a result of discussions with members of defendant's family, with whom he had been in association on the two occasions that he was almost apprehended, as well as information received from another defendant, representatives of the FBI knew that defendant was a user of heroin, that, allegedly, he had been one of the persons who had carried a weapon when the crime was committed, that he had a reputation as a dangerous person, and that in the course of apprehension he might be expected to shoot. The Government contends, and I find as a fact, that the two arresting officers, Special Agent Richard F. Keefe and Special Agent Edward F. Foley, had probable grounds to believe, and in fact believed, that this defendant, when arrested, would resist arrest and would not hesitate to inflict bodily harm on the arresting officers. I find, further, that they had probable grounds to believe, and in fact believed, that they, or whoever might be the arresting officers, would be in bodily peril far greater than that to which they would be normally exposed in executing an arrest warrant in the usual arrest.

Defendant was arrested in the following manner. The FBI determined that defendant was in New York City, and was staying at Roy's Plaza Hotel, at 135th Street. Defendant had been wanted since approximately July 15, 1963 and a concerted effort to apprehend him had been undertaken since September 22, 1963. The information that defendant was at Roy's Plaza Hotel was received from a certain Sidney Goody, a relative of defendant.

Five FBI agents went to Roy's Plaza Hotel, at about 2:00 P.M. on October 14, 1963. The room clerk was shown a picture of defendant and identified him as a certain "Ben Johnson," who was registered at the hotel and occupying Room 214. The clerk advised the agents that he thought the defendant was in his room, and the clerk gave the agents a key to the room to effect entrance. Special Agents Keefe and Foley actually went to the room. They did not have weapons in hand, but had them in a state of readiness and were prepared to use them, if necessary. Other agents were stationed in other parts of the hotel and on the street. Without knocking, or identifying themselves, or stating their purpose, or requesting permission to enter, Special Agents Keefe and Foley, by use of the key, gained a quick entrance to the room. They found the room empty and closed the door behind them. Within the next minute and a half—during which time they ascertained that the room was empty, but conducted no search—they were warned by a telephone call from the room clerk that the defendant was on his way to the room, defendant entered the room, and he was arrested. When defendant was arrested, pursuant to the warrant which had been outstanding for a period of time, he was apprised of the identity of the arresting officers and the charge for which he was being arrested. A search of the person of the defendant, conducted in part at the hotel and followed by a more thorough search at FBI headquarters to which defendant was taken after his arrest, revealed no weapons or narcotics on his person, although defendant admitted that he had carried a gun on his person until approximately two to three weeks before his arrest.

After defendant's arrest he was taken to the lobby of the hotel and immediately taken from there, by automobile, to FBI headquarters, at Third Avenue and East Sixty-ninth Street, in New York City. Upon his arrival at the latter place, defendant was photographed and fingerprinted, and then taken to an interview room. He arrived in the latter place about 3:05 to 3:10 P.M. There he was subjected to a strip search, but no weapons or evidence of any connection with the crime were found on his person. Needle marks were found on both of his arms, but no narcotics were discovered.

After the strip search defendant was advised of his rights to have counsel, and

not to make a statement, and that any statement he might make could be used against him. He expressed no desire to communicate with an attorney, and he immediately started to describe his participation in the bank robbery, and also other matters and other crimes in which he was a participant. His statement was reduced to writing and he signed it. Thereafter, he was taken before a United States Commissioner. His appearance before the Commissioner was at approximately 5:00 P.M. that same day, so that it is concluded that petitioner confessed his guilt, and the statement was reduced to writing and signed, sometime between 3:05 P.M. and 5:00 P.M., and that this two-hour interval occurred about one hour after defendant's arrest.

The starting point in a consideration of whether the doctrine of Wong Sun, supra, applies is a consideration of whether defendant was illegally arrested. Manifestly, entrance into defendant's room by the use of a key furnished by a room clerk was a breaking and, hence, an illegal entrance, Stoner v. State of California, 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856, and entrance without prior notice of identity, request for admittance and statement of the purpose for which entrance was sought rendered the subsequent arrest illegal, Miller v. United States, 357 U.S. 301, 78 S.Ct. 1190, 2 L.Ed.2d 1332 (1958), unless the failure to give such notice is, under all the circumstances, excusable. The fact that defendant was not within the room when the breaking occurred is not in itself any excuse for the failure to give notice. Implicit in the authorities hereafter discussed is the rule that breaking can be justified only when the arresting officer knows, or has reasonable cause to believe, that a defendant is within and the officer is denied entrance.

Miller v. United States, supra, was concerned with an arrest without a warrant in the District of Columbia where the police officers, after announcing in a low voice "Police," broke open a door and arrested the defendant. The arrest was held illegal because the defendant (357 U.S. p. 313, 78 S.Ct. p. 1198) "could not be lawfully arrested in his home by officers breaking in without first giving him notice of their authority and purpose." The reasoning of the Court, in reaching this result, was as follows: After stating first the general principle that the validity of arrests without a warrant by state officers for violations of federal law is to be determined by state law (United States v. Di Re, 332 U.S. 581, 68 S.Ct. 222, 92 L.Ed. 210 (1948), and Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948)), the Court adopted a *concessum* by the government that the validity of an entry to execute the arrest *with or without* a warrant must be tested by criteria identical with those embodied in 18 U.S.C.A. § 3109.[1] This statute was found to be substantially identical to the rule judicially developed in the District of Columbia, Accarino v. United States, 85 U.S.App.D.C. 394, 179 F.2d 456 (1949), although it was noticed that the statute had wider territorial application than just the District of Columbia.

Without limiting its consideration to arrests without warrant, the Court examined early English cases and concluded that the English common law permitted a breaking to effect an arrest only if the arresting officer stated his purpose and requested and was refused entrance, and that this rule was codified in 18 U.S.C.A. § 3109. Because the rule was not observed in Miller's arrest, it was held that Miller's arrest was invalid and that evidence seized should have been suppressed.

In the course of its opinion, the Court, in Miller, adverted to (357 U.S. p. 309,

1. 18 U.S.C.A. § 3109:
 "Breaking doors or windows for entry or exit
 "The officer may break open any outer or inner door or window of a house, or any part of a house, or any-thing therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant."

78 S.Ct. p. 1195): "some state decisions holding that justification for noncompliance exists in exigent circumstances, as, for example, when the officers may in good faith believe that they or someone within are in peril of bodily harm, Read v. Case, 4 Conn. 166, or that the person to be arrested is fleeing or attempting to destroy evidence. People v. Maddox, 46 Cal.2d 301, 294 P.2d 6." In the case at bar, the government seizes on this language, the cases cited to support it and other authorities,[2] to urge, first, that factually this Court should find that the arresting officers here had reasonable grounds to believe that the giving of notice would increase their peril and second, that the facts so found constitute an exception to the legal requirement of notice. While the Court does find the facts urged by the government, the second step in the government's argument does not follow. But before exploring the second step, certain later cases and certain problems raised by the Miller decision should be considered.

Considered alone, it is not clear whether the Miller case prescribes constitutional doctrine or simply a rule of statutory construction, and if the latter, a rule applicable only in the District of Columbia or one applicable throughout the United States when the validity of an arrest by a federal officer for a federal offense is called into question in a federal court. To consider these in inverse order, it will be noted first that by its language, if not by its facts, Miller is more broadly stated than just a rule applying in the District of Columbia. It has been so construed in United States v. Barrow, 212 F.Supp. 837 (D.C.E.D. Pa.1962); dissenting opinion of Mr. Justice Brennan, Ker v. California, 374 U.S. 23, 53, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963); contra, dissenting opinion of Mr. Justice Clark, Wong Sun v. United States, supra, 371 U.S. p. 502, 83 S.Ct.

407. The first problem need not be resolved here, because this Court considers Miller as not limited to the District of Columbia, and in this case there was an arrest by federal officers for a federal crime challenged in a federal court.

Wong Sun v. United States, supra, and Ker v. California, supra, were decided subsequent to Miller v. United States, supra. The Wong Sun case concerned, *inter alia*, the validity of an arrest without a warrant by a federal officer for violation of the federal narcotics laws where the failure to give notice and the breaking were sought to be justified by the fact of flight, the latter being relied on as evidence that the person sought to be arrested had actual knowledge of the identity and purpose of the arresting officers. A detailed recitation of the facts would serve no useful purpose here; it suffices to say that the Court concluded that where, among other things, the officer procured an opening of the door by artifice, there was lacking a sufficient evidentiary basis to sustain the conclusion that the person arrested had such knowledge, rather than to construe his action as a natural desire to repel an unwarranted intrusion. This result was reached by measuring the facts against the criterion of 18 U.S.C.A. § 3109. But, of some significance here, the majority did remark that (371 U.S. p. 484, 83 S.Ct. p. 415) "the Government claims no extraordinary circumstances—such as the imminent destruction of vital evidence, or the need to rescue a victim in peril— * * * which excused the officer's failure truthfully to state his mission before he broke in." Thus, the government claims that exceptions were not only recognized but expressly kept open for application in a proper case.

Ker v. California, supra, is difficult to interpret because there was no opinion of the Court in which five justices concurred in its entirety. The case turned on

---

2. A.L.I., Code of Criminal Procedure (1931), § 24; 1 Restatement, Torts § 206, comment d; Wilgus, Arrest Without a Warrant, 22 Mich.L.Rev. 798, 802 (1924); Hinton v. Sims, 171 Miss. 741,

158 So. 141, 778 (1934); Gurley v. Tucker, 170 Miss. 565, 155 So. 189 (1934); People v. Goldfarb, 34 Misc.2d 866, 229 N.Y.S.2d 620 (1962).

the validity of an arrest without a warrant, procured by a breaking without notice, by state officers enforcing a state narcotics law where the lack of notice and fact of breaking were sought to be justified by imminent destruction of evidence and flight of those sought to be arrested. A majority of the Court upheld the validity of the arrest; but the majority split among themselves as to whether the proper test of validity of a search and seizure, sought to be sustained as an incident to a valid arrest, was to be measured by the "due process" requirements of the Fourteenth Amendment or the "reasonableness" requirements of the Fourth Amendment. Importantly here, the majority apparently recognized and applied the notice exception in the California law, People v. Maddox, 46 Cal.2d 301, 294 P.2d 6, cert. den. 352 U.S. 858, 77 S.Ct. 81, 1 L.Ed.2d 65 (1956), where there is fear of imminent destruction of evidence, and also relied upon evidence that Ker, by eluding the arresting officers prior to arrest, provided a basis for the arresting officers reasonably to conclude that he was expecting their visit.

The government has not cited, nor has this Court found, any federal case which applies an exception to the notice requirements, or provides a justification for the breaking in the case at bar, on the ground of the beliefs held by Special Agents Keefe and Foley as found by the Court. A consideration by the Court of the authorities leads to the conclusion that, at least where the problem is the validity of an arrest by federal officers for a violation of federal law to be determined by a federal court, no such exception exists. This conclusion is reached for a number of reasons:

As has been pointed out, the Miller case relies heavily on the English common law and its requirement of notice in concluding what 18 U.S.C.A. § 3109 requires. Earlier, the English common law was also analyzed thoroughly in Accarino v. United States, supra, where it was concluded (179 F.2d p. 462): "there is no division of opinion among the learned authors * * * upon the proposition

that even where an officer may have power to break open a door without a warrant, he cannot lawfully do so unless he first notifies the occupants as to the purpose of his demand for entry." See also, Thomas, The Execution of Warrants of Arrest, [1962], Crim.L.R. 520, 597, 601–604, as containing no mention of any exception to the requirement of notice on the ground of increased peril to the arresting officer.

Miller v. United States, supra, 357 U.S. p. 313, 78 S.Ct. p. 1198, enjoins that "The requirement of prior notice of authority and purpose before forcing entry into a home is deeply rooted in our heritage and should not be given grudging application." Mr. Justice Brennan in writing the majority opinion in Miller cited Read v. Case, 4 Conn. 166 (1822), the case which is the foundation of the exception urged by the government. But when he wrote the majority opinion in Wong Sun v. United States, supra, and again took note of possible exceptions to the notice requirements, he more limitedly characterized them as extraordinary circumstances (371 U.S. p. 484, 83 S.Ct. 415) "such as * * * the need to rescue a *victim* in peril." (emphasis supplied)

Dissenting in Ker v. California, supra, Mr. Justice Brennan states (374 U.S. p. 55, 83 S.Ct. p. 1640): " * * * Where such circumstances as an escape and hot pursuit by the arresting officer leave no doubt that the fleeing felon is aware of the officer's presence and purpose, pausing at the threshold to make the ordinarily requisite announcement and demand would be a superfluous act which the law does not require. But no exceptions have heretofore permitted unannounced entries in the absence of such awareness on the part of the occupants —unless possibly where the officers are justified in the belief that *someone within* is in immediate danger of bodily harm." (emphasis supplied, footnote omitted).

Perhaps more indicative of the rule of law to be applied than inferences to be drawn from the niceties and differences of expression on the part of Mr. Justice

Brennan is the following passage from Miller v. United States, supra, where, after making reference to Read v. Case, supra, and People v. Maddox, supra, the Court states that (357 U.S. pp. 309–310, 78 S.Ct. p. 1196):

" * * * whether the unqualified requirements of the rule admit of an exception justifying noncompliance in exigent circumstances is not a question we are called upon to decide in this case. * * *

"The rule seems to require notice in the form of an express announcement by the officers of their purpose for demanding admission. The burden of making an express announcement is certainly slight. A few more words by the officers would have satisfied the requirement in this case. *It may be that, without an express announcement of purpose, the facts known to officers would justify them in being virtually certain that the petitioner already knows their purpose so that an announcement would be a useless gesture.* Cf. People v. Martin, 45 Cal.2d 755, 290 P.2d 855; Wilgus, Arrest Without a Warrant, 22 Mich.L.Rev. 541, 798, 802 (1924). * * * " (emphasis supplied, footnote omitted)

This quoted language strongly suggests that the true basis for an exception to the requirement that notice be given lies in the knowledge of the person within, a premise lacking evidentiary support in the case at bar.[3]

The state authorities and texts relied upon by the government have been previously referred to in footnote 2. A number of state decisions, including Read v. Case, supra, are considered in Accarino v. United States, supra, immediately after the consideration in that case of the English authorities. After exhaustive

analysis, the Court concluded (179 F.2d p. 465):

"Upon one topic there appears to be no dispute in the authorities. Before an officer can break open a door to a home, he must make known the cause of his demand for entry. * * * "

My own reading of the authorities leads me to add that the only exceptions to this flat command are where the giving of such notice is a useless act because the person within possesses such knowledge and where such notice is impracticable, because of the imminent danger to a person within or, possibly also, imminent danger of the destruction of evidence.

 In short, reading the literal commands of the Miller case and considering subsequent decisions, I can find no warrant in federal law for applying those state decisions and text writers on which the government relies. I conclude that reasonable belief of increased bodily harm to the arresting officer is not an exception which is available here, and, therefore, I conclude that defendant's arrest was illegal.

Lest this Court be thought to have permitted a legalism to prevail over common sense and to have subjected arresting authorities to an unnecessary risk to their lives and safety in the performance of their duty, it is well to restate what is here decided and to state what here was not done. All that is here decided is that an arresting officer may not break into a home (here, a hotel room) without prior demand for entry, statement of purpose and refusal of admittance *solely* on the ground that to demand entry and give notice would result in increased risk of bodily harm to him. This is decided because repeated deliberate decisions over a course of more than three hundred years have concluded that when there is a conflict between these two considera-

3. Not without significance also is the decision in Stoner v. State of California, supra. There, although not stressed as a basis for the judgment, a search of a hotel room, without a search warrant and not as an incident to a lawful arrest, was condemned as a denial of constitutional right although the police officers persuaded the hotel clerk to unlock the hotel door *because the police officers were concerned about the fact that the defendant had a weapon.*

tions, the right to privacy in one's own home must prevail over society's interest in punishing the guilty. Here a conflict between these considerations could well have been avoided. Defendant's whereabouts were known to the FBI. No valid reason appears why defendant could not have been arrested going into his hotel room, coming out of his hotel room, in a corridor, public room or the elevator of the hotel, or outside of the hotel. By choosing to make the arrest in the legal equivalent of defendant's home, the agents subjected themselves to the necessity of giving notice. Their failure to give notice rendered the arrest illegal.

A confession, which obtains within at least one and one-half hours, and at most three hours, after an illegal arrest and while the defendant has been in continuous custody, is manifestly a fruit of that arrest. Certainly the causal and temporal connection between the two has not become so attenuated as to dissipate the taint, Wong Sun, supra, 371 U.S. p. 491, 83 S.Ct. 407. Nardone v. United States, 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307 (1939). It follows that the confession of Harry Goody, Jr. must be suppressed.