363 So.2d 251 (1978)
Gilbert SWAGGART and Amoco Oil Company
v.
Richard E. HANEY.
No. 50442.
Supreme Court of Mississippi.
September 13, 1978.
Rehearing Denied November 1, 1978.
*252 Shell, Buford, Bufkin, Callicutt & Perry, Richard S. Bush, Cary E. Bufkin, Jackson, for appellants.
Mulhearn & Mulhearn, Wells & Blalock, Tim D. Blalock, Natchez, for appellee.
Before PATTERSON, C.J., and BROOM, and LEE, JJ.
BROOM, Justice, for the Court:
Tort action (personal injury) is the nature of the suit of Richard E. Haney (plaintiff, appellee) against Gilbert Swaggart and Amoco Oil Company (defendants, appellants). Trial in the Circuit Court of Adams County resulted in a verdict of $100,000 in favor of Haney. Amoco and its driver, Swaggart, seek reversal of the judgment against them on the grounds that (1) the evidence was insufficient, (2) the verdict was excessive, and (3) inadmissible testimony was accepted. We reverse.
Amoco's truck (weighing 34,800 pounds, cargo included), driven by Swaggart and *253 hauling 1,615 gallons of propane gas, was traveling west toward Natchez on Liberty Road in Adams County on December 18, 1975, after 7:00 p.m. (dark), when it collided with a pickup truck driven by plaintiff, Haney. The pickup, traveling east on Liberty Road, had just entered a gradual curve at which the road turned in a southeasterly direction. The Amoco truck, coming from the opposite direction, had almost completely gotten past or through the curve at the place where the accident occurred. Amoco's driver, Swaggart, testified that he observed a pickup approaching him on the wrong side of the road, causing him to respond by driving Amoco's truck off the road to the right and onto the north shoulder in an attempt to avoid the collision. Then, according to Swaggart, Haney's pickup struck the Amoco truck just behind its cab at a time when the Amoco truck was almost off the north margin of the road. Haney's version is to the contrary: He was driving his pickup in his proper right-hand lane, the south portion of the road (eastbound traffic lane), and almost off the south margin; Swaggart, in the Amoco truck, had crossed the "center line" and struck the pickup on Haney's side of the road.
No damage to the Amoco truck occurred in the forward portion or grill, but both sides of the top were damaged. Haney's pickup received damages to the left fender and center portion of the door. Although just how the collision occurred is not clear, it was not "head-on." Other facts will be stated where appropriate as to the different aspects of the accident which, so far as appears in the record, was witnessed only by plaintiff Haney (appellee) and the individual defendant Swaggart (one of the appellants).
WAS THE EVIDENCE INSUFFICIENT AS A MATTER OF LAW TO MAKE A JURY ISSUE? Amoco and Swaggart argue that Haney's case was based upon a "factual and physical impossibility" and lacked proper proof to support the jury verdict. They further contend that Haney's testimony is so incredible and inherently and physically impossible that it is totally unreliable and unacceptable. Amoco and Swaggart cite numerous cases which hold, in the main, that verdicts and judgments must be based upon the probabilities of the case, and not on possibilities.
The case must be decided largely upon the diametrically opposed testimony of the two drivers along with the physical facts and testimony of witnesses who arrived at the scene sometime later. It is unfortunate that investigating officers did not promptly arrive after the accident occurred. Before they arrived, considerable vehicular traffic traveled over the accident scene. Plaintiff Haney stated: "I met these headlights and I could see at the time that I met them that he was hogging my side of the road ..." His testimony indicated that the curve was bearing to his right and, according to him, he did not get into the westbound traffic lane occupied by the Amoco truck, driven by Swaggart. Although the plaintiff's version is difficult to reconcile with physical facts in some of the particulars, there are physical facts which substantially support his version. After the collision his truck was overturned in the eastbound lane of Liberty Road and facing east, partially off the pavement. Extending about twenty yards behind Haney's truck, and in about the center of the eastbound traffic lane (his lane), was a trail of broken glass and metal parts.
Scuff marks and gouge marks inside the north portion or westbound traffic lane of Liberty Road, it is argued by appellants, are conclusive evidence that the collision occurred in that lane rather than in the eastbound traffic lane where the plaintiff says the accident or collision occurred. After the collision, Amoco's truck was lying upside down in the ditch on the north side of the road approximately sixty-five yards from where Haney's pickup came to rest upside down. Appellants argue that tire marks left by the Amoco truck when Swaggart drove off the road in an effort to avoid the collision negates completely the plaintiff's version.
*254 Conflicting evidence presented by the parties (without any expert witnesses) makes it almost impossible to determine precisely how the accident occurred. Having considered all the evidence, the jury found for the plaintiff and we cannot say that the verdict was not supported by sufficient evidence. It cannot be said that any laws of physics or sound logic clearly negate either negligence on the part of Swaggart, or Haney's version of the facts. Particularly supportive of the jury's verdict is the fact that so much broken glass and debris were found to the rear of Haney's vehicle, in his proper lane of traffic. Moreover, certain of the photographic evidence indicates that the collision occurred on Haney's (plaintiff's) side of the road.
WAS THE JURY AWARD ($100,000) SO EXCESSIVE AS TO WARRANT A NEW TRIAL OR REMITTITUR?
According to the evidence, Haney received the following injuries: chemical burns over a large portion of his body caused by raw gasoline running from his truck onto him after the accident; fracture of his pelvis bone; rupture or puncture of his bladder; all over bruises; and a cut just under his left eye and another cut on his right eyeball. He was hospitalized at least seventeen days and incurred medical expenses of $4,422.07. That he experienced considerable pain and suffering is beyond question. During 1975 before his injury he earned $11,448 in wages, and from 1976 after the injury he earned only $600. In addition to the above evidence pertaining to Haney's injuries, Dr. Ball, an orthopedic surgeon, testified that Haney would have a fifteen to twenty percent permanent disability due to the hip injury. This expert medical witness further testified that Haney would have difficulty doing the work of a welder and that arthritis may later develop as a result of the injury. Although the $100,000 jury verdict might possibly be higher than another jury would render, we cannot say that it was so high as to evince bias or prejudice, or that it was completely against the overwhelming weight of the evidence.
DID THE COURT COMMIT REVERSIBLE ERROR BY ALLOWING INTO EVIDENCE INFLAMMATORY AND PREJUDICIAL PHOTOGRAPHS SHOWING HANEY'S BURNS? Reversal is urged here based on our holding in Butler v. Chrestman, 264 So.2d 812 (Miss. 1972). There we held that the admission into evidence of motion pictures "depicting excruciating pain and suffering rather than attempting to reveal the actual state of the injuries" was erroneous. In Chrestman the motion picture was several minutes in duration and pictured the plaintiff moving from place to place with the aid of a physical therapist. There the opinion by Patterson, Justice, noted that the camera "zooms in periodically" to show grimaces upon the plaintiff's face and ended showing her apparent crying because of excruciating pain. In the present case the photographs of Haney were still photographs with evidentiary value, and they show no grimace or expression of pain on his face. Absent any showing of facial expression of pain, crying, or the like, we do not think the trial judge abused his discretion by allowing the jurors to see the pictures.
DID THE TRIAL COURT COMMIT REVERSIBLE ERROR IN ALLOWING OFFICER STUTZMAN TO TESTIFY AS TO WHAT PLAINTIFF HANEY TOLD STUTZMAN A FEW DAYS AFTER THE ACCIDENT? During the trial the defense called as its witness Deputy Sheriff Stutzman, who testified on direct examination that he arrived at the scene about 8:30 p.m. and investigated the accident. Stutzman also related what he saw as to physical facts. Then on cross-examination (but without any objection) the deputy testified to what Swaggart told him a few days after the accident. Subsequently, while Deputy Stutzman was still on cross-examination by plaintiff's counsel, he was asked if Haney also provided him with a statement, and Stutzman said: "He did." Following is the controversial question propounded to Stutzman (still on cross-examination) by plaintiff's counsel, along with the objections of defense counsel, court rulings, and Stutzman's answer:

*255 Q. Would you indicate, please, to the Jury, what statement Mr. Haney gave to you?

BY MR. BUFKIN:
If the Court please, this would be self-serving, and we are going to object to it.

BY THE COURT:
I am sorry, I didn't get your question, Mr. Mulhearn.

BY MR. MULHEARN:
The record now has Mr. Swaggart's statement as to what he told the Sheriff's Department, what is reflected in their records, and I am now asking him what the record shows with reference to Mr. Haney's statement.

BY THE COURT:
All right, overruled.

BY MR. BUFKIN:
He would only be entitled to show what Mr. Haney said if it was an admission against interest, your Honor. He would not be able to make a reproduction of a self-serving statement on the part of Mr. Haney.

BY THE COURT:
This is a statement that he took out there, and I will overrule it.

BY MR. BUFKIN:
No, sir, he didn't take it out there.

BY THE COURT:
It's a statement he took from the man. I am going to overrule the objection and let it in.

BY MR. MULHEARN:
Q. Go ahead, Mr. Stutzman.
A. Driver of vehicle number one, which was Mr. Richard E. Haney, stated he was travelling toward Thirty-three on Liberty Road and vehicle number two came around a curve to his right on the wrong side of the road and he had to put two wheels off his right blacktop when the gas truck hit him.
The general rule in Mississippi is that statements in a police report containing conclusions or opinions as to how an accident occurred are inadmissible. Hall v. Boykin, 207 So.2d 645 (Miss. 1968). Such testimony is generally inadmissible for the further reason that it is hearsay unless made in the presence of the opposing party. The plaintiff argues that the error, if any, was "harmless." We note that the objection made at the trial was not on the grounds that the testimony would be hearsay or because it was part of a police report, but that the statement would be "self-serving."
The plaintiff argues that although the "statement could have been deleted, it was, nevertheless, cumulative in nature, being the same thing to which the appellee had previously testified on direct examination." Amoco and Swaggart contend that the error was harmful and reversible because their counsel was unable to cross-examine Haney about what Stutzman testified Haney told him. They note that the statement coming from the mouth of a local deputy sheriff made it more credible in the eyes of the jury. With this we agree and hold that upon the peculiar facts of this record presenting a highly disputed and hotly contested question of fact as to how the accident occurred, allowing Deputy Stutzman to relate to the jury self-serving testimony given him by plaintiff, Haney (outside the presence of Swaggart), a few days after the accident can hardly be allowed to stand on the ground of harmless error. Scott County Co-Op v. Brown, 187 So.2d 321 (Miss. 1966); Bullard v. Citizens Nat'l Bank, 177 Miss. 735, 171 So. 540 (1937).
The effect of the self-serving testimony was to allow into evidence Haney's out-of-court testimony to supplement his in-court testimony making his testimony double-barrelled in the sense that it came from two witnesses, one of them a law officer. Both the Co-Op and Bullard cases condemn allowing a litigant to "testify for himself out of court." Of course, the testimony was (as plaintiff points out) cumulative in nature, but coming from a witness (deputy sheriff) wearing the badge of the law, it could very likely have been given more weight and worth than it would have had it come from only the plaintiff himself. Here the issue of which driver was negligent was a very close factual question, making the self-serving *256 testimony of greater significance than would be the case if the proof were overwhelming that Haney did not invade Swaggart's correct (westbound) traffic lane. The absence of any eye-witness to the collision (except Haney and Swaggart) added to the likelihood that the self-serving testimony improperly influenced the jury. Although the objection as made did not raise the issue of the statement being hearsay, or the content of a police report, the objection based on the self-serving aspect was specific and valid. It was erroneously overruled and requires another trial of the case.
REVERSED AND REMANDED.
PATTERSON, C.J., SMITH and ROBERTSON, P. JJ., and SUGG, WALKER, LEE, BOWLING and COFER, JJ., concur.